665 So.2d 852 (1995)
Ricky G. EAKES a/k/a Rickey Gene Eakes
v.
STATE of Mississippi.
Nos. 92-KA-00294-SCT, 92-KA-00638-SCT.
Supreme Court of Mississippi.
October 26, 1995.
Rehearing Denied December 21, 1995.
*857 Marvin E. Wiggins, Jr., DeKalb, for appellant.
Michael C. Moore, Attorney General, Pat S. Flynn, Ass't Attorney General, Jackson, for appellee.
Before PRATHER, P.J., and BANKS and SMITH, JJ.
PRATHER, Presiding Justice, for the Court:

I. STATEMENT OF THE CASE
This criminal appeal arises from Ricky G. Eakes' conviction, in the Circuit Court of Kemper County, of two counts of sexual battery and one count of attempted sexual battery.[1]
For the first count of sexual battery, Eakes was sentenced to twenty years, charged with a fine of $10,000.00, and court costs of $165.00. The sentence imposed for the second count of sexual battery was twenty years in Mississippi Department of Corrections (MDOC), to run consecutively to count I. A third twenty-year sentence, to run concurrently with counts I and II, were imposed for the attempted sexual battery conviction. Eakes was also ordered to receive sex abuse counseling from the Department of Corrections. Eakes' motion for Judgment Notwithstanding the Verdict (JNOV) or for new trial was overruled. Eakes subsequently appealed to this Court, requesting review of the following issues:[2]
A. Whether the trial court erred by failing to dismiss the indictment;
B. Whether the trial court erred in allowing a multi-count indictment;
C. Whether the State violated Rule 4.06;
D. Whether the trial court erred in refusing to grant Appellant a one-week continuance;
E. Whether the trial court erred in denying Appellant's discovery motion;
F. Whether the trial court erred in denying individual and/or sequestered voir dire;
G. Whether the trial court erred by admitting hearsay testimony;
H. Whether the trial court erred by admitting evidence of prior bad acts, of Appellant's character, and by admitting irrelevant, prejudicial, and inflammatory testimony;
I. Whether the trial court erred in allowing the testimony of three children;
J. Whether the trial court erred by allowing the State to lead the child witnesses;
K. Whether the trial court erred by excluding relevant evidence offered by Appellant;
L. Whether the trial court erred by granting instructions S-1, S-3, and S-4 and by denying instructions D-10 and D-8;
M. Whether the trial court erred in denying Appellant's motion for JNOV or for new trial;
N. Whether the verdict is against the overwhelming weight of the evidence;

*858 O. Whether Appellant suffered ineffective assistance of counsel;
P. Whether the trial court erred in the determination of Appellant's sentence;
Q. Whether the trial court erred in its determination of the attorney fee approved for Appellant's trial counsel;
R. Whether, despite the lack of objections at trial, the record reflects plain error regarding admission of hearsay, admission of prior bad acts, and admission of prejudicial and irrelevant testimony; and
S. Whether Appellant was denied a fair trial by the accumulation of errors.

II. STATEMENT OF THE FACTS
Lewis Myers had three children: a son, Shawn, aged twelve, and two daughters, April, aged nine, and June, aged seven at the time of trial.[3] On May 11, 1991, the three children spent the night at the home of Ricky Eakes, who was a friend of their father, Lewis Myers. The testimony introduced at trial established that during that night, Ricky Eakes came into their bedroom, sat on the bed and put his hand inside April's panties. When she told him to stop, he did. Later that night, Eakes came back and got into the bed with April and June. He placed his hands on April's breasts, between her legs, and inserted his penis into her rectum. April in her own terms described anal and digital penetration, attempted anal penetration and attempted cunnilingus by Eakes.
April eventually told Shawn of this activity, who in turn told their stepmother, Marianne.[4] Lewis and Marianne took April for a medical examination. A physical exam revealed that April had no tears, bruising, or lacerations in her vagina or rectum, no loss of sphincter tone in the rectum[5], and her hymen was intact. However, the child tested positive for chlamydia in her vagina, gonorrhea of the anus, and for gonorrhea and chlamydia in her mouth. Both gonorrhea and chlamydia are transmitted either by ejaculation or by vaginal discharge. Following treatment with antibiotics, repeat testing by the health department two weeks later showed April to be free of gonorrhea and chlamydia. April again tested negative for any sexually transmitted diseases in February 1992.
Lewis Myers reported the incident to Deputy Sheriff Mike McKee, who in turn asked for an investigation by Linda Palmer, a social worker with the Department of Human Services (DHS). Upon investigation, Palmer learned of a similar incident between Eakes and April in December 1990 and in March 1991. Shawn and June corroborated April's testimony of these actions, but not on all of the dates.
About one week after the complaint against Eakes, the Myers' house burned and the Myers family moved in with the three children's grandmother, Mrs. Linda M. Greer and her son, Tom Greer. Shortly thereafter, Palmer learned that Shawn and June were also infected with venereal disease. June told Palmer that Eakes had put his hands around her throat as if to choke her and his finger down her throat.[6]
After Eakes was arrested, the Myers children told conflicting stories. April accused her uncle, Tom Greer, of sexually abusing her. However, when testifying before the grand jury, April recanted this accusation against Todd, stating that Eakes suggested this action. Shawn also accused Tom Greer of sexually abusing him, but also recanted his story before the grand jury, asserting that *859 Eakes had threatened to kill him otherwise. The children had been removed from their father's custody and placed in foster care and remained there until the time of trial.
Ricky Eakes, with his mother, denied his presence in the home on the night of December 1990, when the incident was alleged to have occurred. He testified that he was in Arkansas. Further, he denied any sexual actions toward any of the Myers children or any suggestions that they falsely accused their Uncle Tom of misconduct. He asserted a dispute with Lewis Myers over a relationship with another woman.
The sheriff obtained a blood test from Eakes under court order, but Eakes refused additional tests for chlamydia or gonorrhea. The sheriff did not force Eakes to provide the tests despite the fact a warrant had been issued for the same.
An inmate at the jail with Eakes testified that Eakes stated to him that he was not worried because he and his girlfriend had "got checked, and he had took a shot." Two of his girlfriends denied having had venereal diseases.

III. THE LAW

A. Whether the trial court erred by failing to dismiss the indictment.

1. The Parties' Contentions
Eakes contends the indictment is defective because it fails to specify the dates and locations that the alleged offenses occurred, fails to specify statute, fails to allege an overt act or frustration of purpose as to the attempt charge, fails to set forth the facts necessary to establish the offenses. As a result of these defects, Eakes claims he was not apprised of the nature of the charges against him, and he may be subject to double jeopardy in the future. Eakes further claims the trial court erred by allowing a substantive mid-trial amendment of the indictment from sexual battery to attempted sexual battery, forcing Eakes to suddenly defend against new elements and issues.
The State counters that a specific date in a child abuse case is not necessary and that the sexual battery statutory language was tracked in the instant indictment. Further, the indictment indeed alleged an overt act, to wit: "placing his penis into her anal cavity." Regarding frustration of purpose, the State claims this was an element of proof for the State at trial rather than an element which was required in the indictment. The State also takes issue with Eakes' double jeopardy argument, claiming that the indictment was sufficiently specific to prevent future charges of sexual battery on the same child within the same dates. The State argues that the amendment of the indictment from sexual battery to attempted sexual battery, in conformity with the evidence presented at trial, was one of form rather than of substance. Regardless of any amendment to the indictment, the State contends Eakes could have been convicted of attempt as a lesser included offense.

2. Analysis
The indictment charged Eakes with four counts of sexual battery against April Myers. Following April's trial testimony, which established one completed digital-vaginal penetration, one completed penile-anal penetration, one attempted penile-anal penetration, and two attempts at cunnilingus, the defense moved for a dismissal of counts three and four. The State responded with a motion to amend the indictment by reducing counts three and four to fondling. The trial court declined to allow this substantive amendment of the indictment, granted Eakes' motion to drop count three, and allowed the State to amend the fourth count to attempted sexual battery. Eakes claims this amendment is one of substance rather than of form.
An indictment may only be amended at trial if the amendment is immaterial to the merits of the case and the defense will not be prejudiced by the amendment. Griffin v. State, 584 So.2d 1274, 1276 (Miss. 1991). However, amendments as to the substance of the charge must be made by the grand jury. The test for whether an amendment to the indictment will prejudice the defense is whether the defense as it originally stood would be equally available after the amendment *860 is made. Id.. See also, Shive v. State, 507 So.2d 898, 900 (Miss. 1987).
"An attempt to commit a crime is, as a general rule, an indictable offense, which is separate and distinct from the crime itself." Mason v. State, 430 So.2d 857, 858 (Miss. 1983) (citing Miss. Code Ann. § 97-1-7 (1972)). However, Miss. Code Ann. § 99-19-5 allows a jury to convict of the crime charged in the indictment or of an attempt to commit the offense charged. Miss. Code Ann. § 99-19-5 (1994). By virtue of this statute, Eakes had notice that he could be convicted of the attempt charge. The amendment of the indictment in this case had the same result as a permissible jury instruction on the attempt charge. Thus, Eakes' defense to the sexual battery charge was still available to him with regard to the attempted sexual battery charge. Therefore, the amendment was immaterial and did not prejudice the defendant.
Eakes also contends that the indictment was defective because it did not set forth specific dates. If an indictment includes the seven enumerated items provided in Unif.Crim.R.Cir.Ct.Prac. 2.05, it is sufficient to provide the defendant with notice of the charge against him. Roberson v. State, 595 So.2d 1310, 1318 (Miss. 1992). Rule 2.05 says the indictment must be "a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation against him." See also Smallwood v. State, 584 So.2d 733, 738 (Miss. 1991) (indictment legally sufficient if it gives accused fair notice of offense with which he is charged).
While Rule 2.05 sets forth the requirement of the date the offense occurred, it also states that "[f]ailure to state the correct date shall not render the indictment insufficient." In Morris v. State, 595 So.2d 840, 842 (Miss. 1991), this Court found that a specific date in a child sexual abuse case is not required so long as the defendant is "fully and fairly advised of the charge against him." The abuse in Morris allegedly occurred continuously over a period of years.
Eakes' indictment alleges his crimes of sexual penetration against April Myers occurred "on, about or between" December 1, 1990 and December 24, 1990; February 1, 1991 and April 30, 1991; and "on or about" May 11 and 12, 1991. At trial April was more specific, claiming Eakes had abused her on December 26, 1990, January 26, 1991, and March 16, 1991. She also provided particular reasons and/or events which caused her to be at Eakes' home on these dates. The dates testified to are close to the dates charged in the indictment. Given that Eakes was fully and fairly advised of the charges against him, the lack of specific dates in the indictment is not fatal.
While Eakes claims the indictment lacks the specific location the abuse occurred and the reference to the statute violated, the indictment clearly states that the violations occurred in Kemper County and cites Miss. Code Ann. §§ 97-3-97 and 97-3-95. Eakes' double jeopardy claim is also disingenuous. Contrary to the situation in Umphress v. State, 295 So.2d 735, 736-37 (Miss. 1974), where the indictment did not specify a time, place, or person to whom delivery of drugs was made, Eakes could claim double jeopardy if additional actions are brought charging him with sexually abusing April Myers in Kemper county on or about the dates specified.

B. Whether the trial court erred in allowing a multi-count indictment.

1. The Parties' Contentions
Eakes claims the multi-count indictment is improper because the alleged offenses are not based on two or more connected acts or transactions, and are not separate parts of a common scheme or plan. Instead, the time period between the offenses should have mandated severance of the counts for trial. The trial court's failure to follow the proper procedure upon request for severance is, according to Eakes, cause for reversal.
The State answers that the multi-count indictment was proper because the incidents were connected by the identity of victim and identity of the act committed. Moreover, the trial judge followed the procedure recommended *861 and held a hearing on the severance motion. Finally, according to the State, Miss. Code Ann. § 99-7-2 allows a single trial for two or more offenses properly charged in a multi-count indictment.

2. Analysis
When a multi-count indictment has been returned and the defendant requests severance, a hearing should be held on the issue. Corley v. State, 584 So.2d 769, 772 (Miss. 1991). The State bears the burden of a prima facie showing that the offenses are within the language of Miss. Code Ann. § 99-7-2 (1994), which allows multi-count indictments. Corley, 584 So.2d at 772. If this burden is met by the State, the defense "may rebut by showing that the offenses were separate and distinct acts or transactions." Id. The trial court should consider the time period between the offenses, whether evidence proving each offense would be admissible to prove the other counts,[7] and whether the offenses are interwoven. Id. If this procedure is followed, this Court will give deference to the trial court's findings on review, employing the abuse of discretion standard. Corley, 584 So.2d at 772.
Eakes was heard on the severance issue pre-trial. First, the defense claimed that separate events over a wide number of days could not be combined in a multi-count indictment, citing McCarty v. State, 554 So.2d 909 (Miss. 1989). The State cited Allman v. State, 571 So.2d 244 (Miss. 1990) in support of a finding that the offenses with which Eakes was charged were within the language of § 99-7-2. The defense did not rebut this showing and, in fact, apparently decided not to pursue further the motion to sever. Nonetheless, it is clear that the trial court considered the time period between the offenses and whether evidence proving one offense would be admissible to prove the other counts if separate trials were held.[8] Although the trial judge expressed his hesitancy to sever, no formal ruling was made on the motion when it was not pursued.
Miss. Code Ann. § 99-7-2 (Supp. 1994) provides that two or more offenses may be charged in the same indictment, using separate counts for each offense, if "(a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan." Miss. Code Ann. § 99-7-2(1) (1994). Use of the disjunctive "or" provides three options. However, this Court stated, in McCarty, that either a common transaction or occurrence is required or, if the transactions occurred at different times, the time period between them must be insignificant in order that a multi-count indictment be permissible. McCarty, 554 So.2d at 915. Restated, a finding that the intervening time period is insignificant is a prerequisite to both the second and third options of § 99-7-2(1), i.e., that the transactions are either connected or part of a common scheme or plan.
This Court subsequently explained that transactions involving the same victim and the same kind of act committed by the same defendant are connected, for purposes of § 99-7-2. Allman v. State, 571 So.2d 244, 248 (Miss. 1990). The Court in Allman also determined that the two rapes and the attempt at issue[9] were part of a common scheme or plan.[10]Allman, 571 So.2d at 248-49. Implicit in the Allman holding is a finding that the length of intervening time periods is insignificant.
The transactions upon which Eakes' offenses are based occurred over a period of five months. This time period is insignificant, given that nine months was insignificant in Allman. The transactions in the case sub judice involve the same victim and the *862 same type of act; therefore, the transactions are connected, pursuant to Allman. Eakes' alleged offenses also appear to have been part of a common plan as the offenses were committed only against April Myers even when other children, including her sister, were present and available targets. Had the charges been severed, evidence of each offense would have been admissible at trials for the other offenses. Mitchell v. State, 539 So.2d 1366, 1372 (Miss. 1989) (evidence of other sexual relations by the defendant with the victim admissible to show the defendant's lustful, lascivious disposition toward the victim). Pursuant to two of the three options presented by § 99-7-2(1), the offenses were properly combined in a multi-count indictment.
Section 99-7-2 further provides that multiple offenses properly charged in a single indictment are properly tried in a single trial. Miss. Code Ann. § 99-7-2(2) (Supp. 1994). It follows that Eakes' offenses were properly tried in a single proceeding. There is no error here.

C. Whether the State violated Rule 4.06.

D. Whether the trial court erred in refusing to grant Appellant a one week continuance.

1. The Parties' Contentions
Eakes claims the State failed to use due diligence in discovery and disclosure of witness statements, expert reports, and other exculpatory materials. More specifically, Eakes finds fault in the State's late disclosure of his blood test results, results of any tests performed on a bedspread taken from the home of Ricky's mother, allegedly upon which April said her blood was located, a search warrant for tissue samples from Eakes, and DHS records compiled by Linda Palmer regarding the Myers children.
The State contends that: no blood or tissue tests were run; therefore, there were no results to disclose to the defense; no tests were run on the bedspread; therefore, there were no results to disclose to the defense; the bedspread was handed over to the defense at the time it was requested; the prosecution did not plan to use the bedspread at trial and informed both the defense and the trial judge of their decision. Therefore, failure to provide the defense the bedspread until the defendant asked for it was a technical violation with no resulting prejudice.
Eakes complains that the trial judge refused to agree to a one week continuance of the trial to allow Eakes to examine (DHS) records not tendered until just prior to trial. Eakes claims the continuance would have put the trial at the second week of the court term, which the trial judge had no ability to pretermit by holding court in other counties in the district.
Eakes announced he was ready for trial, proceeded through voir dire, and questioned two witnesses before he renewed his motion, which was precipitated by Eakes' need to study the welfare records of the Myers children. According to the State, Eakes was at fault because he had failed to request these records until four days prior to trial. Moreover, the State claims Eakes suffered no prejudice from denial of his motion.

2. Analysis
1. Box v. State, 437 So.2d 19 (Miss. 1983) (Robertson, J., specially concurring), first set forth the procedure trial courts should follow when confronted with a discovery violation. Miss.Unif.Crim. R.Cir.Ct.Prac. 4.06 now reflects the Box procedure. When faced with previously undisclosed evidence to which the defendant has objected, the trial court should give the defendant a reasonable opportunity to familiarize himself with the evidence. If the defendant thereafter believes he may be prejudiced by admission of the evidence because of his lack of opportunity to prepare to meet it, he must request a continuance. Should the defendant fail to request a continuance, he has waived the issue. If he indeed requests a continuance, the State may opt to proceed without the undisclosed evidence, else the trial court must grant the continuance. Cole v. State, 525 So.2d 365, 368 (Miss. 1987), cert. denied, 488 U.S. 934, 109 S.Ct. 330, 102 L.Ed.2d 348 (1988).
The chancellor's order authorizing disclosure of the youth court records was not *863 obtained by the district attorney until the morning of trial.[11] The district attorney in turn obtained the records, photocopied them, and delivered them to defense counsel at approximately 9:15 a.m. The trial judge also noted that the following week was not available to try the case as trial had been pending for ten months. The judge denied the motion for continuance. Eakes argued that he had mentioned the motion to the trial judge earlier that morning, prior to receipt of the youth court records, but the judge had denied the motion. Eakes explained that he had renewed the motion now to get a denial on the record. The trial judge responded that perhaps he had given the distinct impression that he would deny the motion, but that he had not actually denied the motion.
While the prosecuting attorney could have obtained the youth court records via a youth court order,[12] that was not done in this case because the district attorney did not feel these records were necessary for trial. The prosecution had a report from Linda Palmer, lab results from tests on April, and copies of reports from the testing lab, all of which were furnished to Eakes during discovery. The prosecution had also provided the defense with a list of witnesses and copies of April's statements.
Eakes did have the records at issue from the time the trial began to the time he filed his appeal. Still, Eakes has yet to assert any particulars regarding how he was prejudiced or what he would have done differently had he been provided the records any earlier.[13] This Court finds that Eakes' delay in requesting a continuance until after the trial had begun, in combination with his failure to affirmatively show any prejudice, waives any error and prevents reversal.

E. Whether the trial court erred in denying Appellant's discovery motion.

1. The Parties' Contentions
Eakes claims he was denied access to the three child witnesses and April's doctor because the children were in the custody of the county human services department. The State contends the trial court was correct in finding that it had no authority to issue the order requested by Eakes because a witness may refuse to discuss his testimony with defense counsel prior to trial.

2. Analysis
When the pre-trial motions were heard, Eakes requested that the trial court issue an order instructing the Myers children to talk to defense counsel. The trial court noted that Eakes knew the children were in custody of DHS and that he knew which social worker was assigned to the case; therefore, defense counsel could certainly attempt to contact and question the children. However, the trial court stated that the legal guardian or custodian (DHS) could deny the request and the court could not order witnesses to confer with counsel prior to trial. Eakes also requested that the court order April's physician to talk to defense counsel and provide April's medical records. The State had not seen the child's medical records and did not intend to use them at trial. Nonetheless, the trial judge concluded that April's venereal disease would be an issue at trial; therefore, he ordered that the medical records be obtained and furnished to the court for inspection. The trial court would then review the records and furnish anything of relevance to defense counsel. Eakes still wanted an order requiring that the doctor talk to him; the trial court refused, stating there was no authority for such an order. The trial court also ordered the State to provide the defense with any statements relevant to this case made by April to the treating physician.
While it is true that the defense cannot be denied access to prospective witnesses, Lacy v. State, 629 So.2d 591, 593 (Miss. 1993), the circuit court clearly lacks authority to require a witness to talk to defense counsel prior to trial. Tolbert v. *864 State, 511 So.2d 1368, 1378 (Miss. 1987); Boches v. State, 506 So.2d 254, 261 (Miss. 1987). The trial judge in the instant case correctly determined that he lacked the authority to issue the orders requested by Eakes. There is no merit to this issue.

F. Whether the trial court erred in denying individual and/or sequestered voir dire.

1. The Parties' Contentions
Eakes claims the trial court should have allowed individual, sequestered voir dire of the venire due to the intimate nature of the questions asked regarding whether any member of the venire had been either victim or perpetrator of sexual abuse. The State responds that the trial court followed Uniform Criminal Rule of Circuit Court Practice 5.02 and the procedure approved by this Court in Russell v. State, 607 So.2d 1107 (Miss. 1992).

2. Analysis
Pre-trial, Eakes requested individual sequestered voir dire, due to the nature of the case and the sensitive questions which might be asked on voir dire. The trial court denied the motion, but noted that individual voir dire for further exploration would be allowed if an individual juror responded to a question put to the entire panel.
Unif.Crim.R.Cir.Ct.Prac. 5.02 governs the procedure for conducting voir dire. Russell v. State, 607 So.2d 1107, 1110 (Miss. 1992). The Rule allows for individual examination of venire members "only when proper to inquire as to answers given or for other good cause allowed by the court." Unif.Crim. R.Cir.Ct.Prac. 5.02. Pursuant to this Rule, questions during voir dire will generally be propounded to the entire venire. Russell, 607 So.2d at 1110 (citing Billiot v. State, 454 So.2d 445, 456 (Miss. 1984)). The trial court, in the case sub judice, followed Rule 5.02. Additionally, there is neither a showing nor an allegation that the jury was not fair and impartial. There is no error here.

G. Whether the trial court erred by admitting hearsay testimony.

1. The Parties' Contentions
Eakes complains of the trial court's admission of hearsay from Deputy Mike McKee, Dr. Alice Lorenzana, a doctor specializing in pediatrics, who initially examined April, and Linda Palmer, a Department of Human Services social worker. While Eakes admits the trial court conducted the hearing mandated by M.R.E. 803(25) to determine admissibility of hearsay offered by Linda Palmer, he disagrees with the trial court's ruling. He also argues that the lack of such hearing and lack of written findings of trustworthiness regarding the hearsay testimony of McKee and Lorenzana are errors requiring reversal. Further, Eakes contends the trial court erred by not requiring Lorenzana to show that the hearsay offered by her was obtained for purposes of medical diagnosis and treatment. Although Eakes failed to object at trial, he now asks this Court to reverse on this issue by finding plain error.
The State counters that Palmer's testimony was properly admitted pursuant to M.R.E. 803(25). Eakes' timely objection to the hearsay testimony of McKee, according to the State, was sustained; however, the defense then failed to request an instruction to the jury to disregard. Regarding Lorenzana's testimony, the State claims admission was proper pursuant to M.R.E. 803(4) and asks this Court to extend the reasoning of Jones v. State, 606 So.2d 1051 (Miss. 1992). Even without an extension, the State argues admission of Lorenzana's testimony does not require reversal because the declarant actually testified and was available for cross-examination.

2. Analysis
Linda Palmer testified that April, Shawn, and June had identified Eakes as the perpetrator of this crime. When Palmer first began to repeat what April had told her, Eakes objected to the hearsay. The State argued such testimony was admissible pursuant to M.R.E. 803(25).
M.R.E. 803(25) provides an exception to the hearsay rule for:
[a] statement made by a child of tender years describing any act of sexual contact performed with or on the child by another ... if (a) the court finds, in a hearing *865 conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
Pursuant to this Rule, the trial court conducted a hearing outside the presence of the jury and quoted the requirements of M.R.E. 803(25). He determined that the jury had viewed the demeanor of Shawn and June when the children testified; April had also been observed on the witness stand; Palmer was an educated, experienced social worker and a credible witness whose opinion regarding the children's truthfulness impressed the court "sufficiently to draw the conclusion that the hearsay statements do have sufficient indicia of reliability to be admissible." However, the trial judge noted that he might exclude evidence of any alleged sexual offenses by Eakes against June or Shawn.
Palmer then testified to what April had told her about the incidents with Eakes and to April's and Shawn's allegations against Tom and their recanting of these allegations. On cross-examination, Eakes raised the question of June and Shawn having venereal disease and asked Palmer if she knew the source of that disease, which she did not. On redirect, the State continued on this path and asked Palmer what June had said Eakes did to her. Although Eakes objected, the trial court determined that since Eakes had opened the door, the State could pursue this line of questioning. Eakes then objected as to hearsay, which objection was overruled on the basis of M.R.E. 803(25) and the previously conducted hearing pursuant to the Rule. Palmer was allowed to testify regarding Eakes putting his fingers down June's throat, June's reaction after she admitted this to Palmer, and June's reaction to the anatomically-correct nude male doll.[14] Recross was allowed, during which Palmer noted that although Shawn said nobody had abused him, she knew otherwise because of his venereal disease.[15] Re-redirect was not allowed.
"The `substantial indicia of reliability' required by M.R.E. 803(25) are necessary to prevent confrontation clause problems." Doe v. Doe, 644 So.2d 1199, 1206 (Miss. 1994). The reliability of the statement must be judged independently of any corroborating evidence; otherwise, the confrontation clause may be violated. Doe, 644 So.2d at 1206 (citing Griffith v. State, 584 So.2d 383, 388 (Miss. 1991)). While no mechanical test is available, factors which should be considered in judging reliability are: spontaneity and consistent repetition; mental state of declarant; use of terminology unexpected of a child of similar age; and lack of motive to fabricate. Doe, 644 So.2d at 1206. This list of factors is not exclusive. Doe, 644 So.2d at 1206 (citing Idaho v. Wright, 497 U.S. 805, 822, 110 S.Ct. 3139, 3150, 111 L.Ed.2d 638 (1990)). When the correct legal standard is employed by the trial court, this Court will reverse a finding of admissibility only when there has been an abuse of discretion. Doe, 644 So.2d at 1207.
The trial judge conducted a hearing outside the presence of the jury, as required by M.R.E. 803(25)(a), and quoted the requirements of the Rule. He then determined, based on the Myers children's demeanor while on the witness stand and on Palmer's qualifications and opinion, that the requisite reliability existed. Appropriately, no corroborating evidence was mentioned by the judge as a basis for his finding of reliability. Doe, 644 So.2d at 1206 (citing Griffith v. State, 584 So.2d 383, 388 (Miss. 1991)). As all three Myers children had previously testified, no corroborating evidence was necessary for other purposes. See M.R.E. 803(25)(b)(1) and (2).
*866 The trial judge, however, made no mention of the Wright factors in his determination that the children's statements were inherently reliable. While June's statements were the most spontaneous, all of the children's statements were made to Palmer during sessions aimed at eliciting such information. The children were consistent regarding their allegations against Eakes. Palmer also testified to the children's mental states: frightened and upset. The terminology used by the children was clearly childlike. Whether there was a motive to fabricate is less clear, given the suggestion that the children named Eakes rather than their Uncle Tom in order that the Myers family might live together again. However, the allegations against Eakes came both before and after any mention of Tom's involvement, arrest, and release. On the whole, there is sufficient support in the record for a finding of reliability. The children testified and were cross-examined thoroughly by Eakes, which precludes any confrontation clause problems. Consequently, the trial judge did not err in allowing Palmer to testify regarding the children's allegations against Eakes.
Deputy McKee testified that the Myers children claimed "Ricky" was April's abuser. Eakes objected to hearsay and the objection was sustained. The court did not instruct the jury to disregard, nor did Eakes request such an instruction. However, at this point in the trial, the Myers children had already testified and been cross-examined. McKee's hearsay testimony was, at most, cumulative and did not serve to further prejudice Eakes.
Dr. Lorenzana likewise testified that April, while providing a medical history,[16] said she had been sexually abused and named "Ricky" as her abuser. Eakes objected to hearsay, but the objection was overruled and the testimony was allowed pursuant to M.R.E. 803(4). This Rule provides, in pertinent part, for admission of
[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness.
This Rule allows statements identifying the perpetrator in child abuse cases. Doe, 644 So.2d at 1205 (citing Jones v. State, 606 So.2d 1051, 1056 (Miss. 1992) and Mitchell v. State, 539 So.2d 1366 (Miss. 1989)). A dual-pronged test must be met prior to admission of evidence pursuant to M.R.E. 803(4): "`the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and ... the content of the statement must be such as is reasonably relied on by a physician in treatment.'" Doe, 644 So.2d at 1206 (quoting Jones v. State, 606 So.2d 1051, 1056 (Miss. 1992) (citing U.S. v. Renville, 779 F.2d 430, 436 (8th Cir.1985))). A statement identifying the perpetrator as a member of the victim's household is reasonably pertinent to treatment and, consequently, reasonably relied upon by physicians in diagnosis and treatment. Doe, 644 So.2d at 1206 (citing Jones, 606 So.2d at 1056-57).
Applying, the two-part test which must be met prior to a finding of admissibility, it is first noted that the motive behind informing a treating physician that one has been sexually abused is consistent with the purposes of promoting treatment. The doctor cannot begin to treat the patient without knowing the patient's complaint. Surely prevention of further abuse is part of the treatment of sexual abuse; therefore, the motive behind identifying the perpetrator is also consistent with the purposes of promoting treatment. Given the premise underlying the "medical history/diagnosis" exception to the hearsay rule, i.e., that patients do not lie to their doctors when requesting treatment, a statement *867 that one has been sexually abused, as well as any identification of the perpetrator, is reasonably pertinent to treatment and, therefore, reasonably relied upon by a treating physician.
In Doe, this Court expanded Jones, supra, to allow a finding that the identity of the child's sexual abuser was pertinent to treatment, therefore reasonably relied upon by the treating physician, although the perpetrator was not a member of the child's household. Since the alleged perpetrator in Doe was the child's father, whose visitation rights were at issue, this Court reasoned that prevention of further abuse was an immediate concern. Doe, 644 So.2d at 1206. It follows that prevention of further abuse will always be an immediate concern, whether the perpetrator has daily, weekly, or only sporadic opportunity to abuse a child.
There is no logical reason to find that a statement identifying the perpetrator is sufficiently pertinent to treatment and reliable if the perpetrator is someone who has regularly scheduled contact with the child but not if the perpetrator is, instead, a family friend, an acquaintance, or a stranger. The statement regarding April's identification of Eakes as her abuser, although he was not a member of April's household or someone who had regular contact with the child, was properly admitted pursuant to M.R.E. 803(4).
In the instant case, the trial court did not make any on-the-record findings regarding the prerequisites to admission pursuant to M.R.E. 803(4). While the Rule does not explicitly command that such findings be made on the record, the lack of any record impedes review by this Court. This Court, therefore, takes this opportunity to instruct trial courts to make on-the-record findings of satisfaction of the two-part test. Had such a court inquiry been made in the instant case, April's statement that she had been sexually abused and her identification of her perpetrator should have been admitted. The child's motive was consistent with the purposes of promoting treatment, and the fact that she was sexually abused is clearly reasonably pertinent to treatment; therefore, it was reasonably relied upon by the treating physician. Although the trial court failed to make on-the-record findings regarding admissibility pursuant to M.R.E. 803(4), there was no abuse of discretion in allowing Dr. Lorenzana's testimony.

H. Whether the trial court erred by admitting evidence of prior bad acts, of Appellant's character, and by admitting irrelevant, prejudicial, and inflammatory testimony.

1. The Parties' Contentions
Eakes complains of the trial court's admission of testimony by Linda Palmer, Cleveland Earl Wrencher and Kim Scarbrough.

2. Analysis

a. Linda Palmer's Testimony
According to Eakes, Palmer's testimony regarding June Myers was unduly prejudicial pursuant to M.R.E. 403, i.e., that relevant testimony may be excluded if substantially outweighed by unfair prejudice. Eakes further contends that the trial judge failed to make a finding that the probative value of this testimony outweighed its prejudicial value. Despite his failure to object at trial, Eakes now claims admission of this testimony requires reversal. The State contends that the content of Palmer's testimony, to which Eakes now objects, was first brought out by the defense on cross-examination of June.
Eakes also complains of Palmer's testimony regarding statements made by June Myers to the effect that the child was afraid of Eakes and that Eakes had stuck his fingers down her throat. Also specified by Eakes as inadmissible is Palmer's telling of June's reaction to the anatomically-correct dolls. This subject, too, was first introduced by Eakes. When cross-examining June, he asked whether she had ever told Palmer that Eakes had done anything to her (June).[17] When June said she had, Eakes asked if it was true. June admitted it was not. Eakes' attack of June's credibility opened the door for the State to further explore the matter on redirect. Crenshaw v. State, 520 So.2d 131, 133 (Miss. 1988).
*868 When Linda Palmer took the stand, the State elicited testimony regarding June's fear of Eakes, June's reaction to the naked adult male doll, her allegations of Eakes' having stuck his fingers down her throat. Palmer also stated that she "felt that [June] was being truthful" about Eakes' having stuck his fingers down her throat. However, Eakes did not object to this at trial. Thus, because the defense "opened the door" for such testimony by Palmer, and because the defense failed to lodge a contemporaneous objection, Eakes' argument on this point lacks merit. See Crenshaw v. State, 520 So.2d 131, 133 (Miss. 1988). Robinson v. State, 585 So.2d 735, 737 (Miss. 1991); M.R.E. 103(a)(1).
Eakes claims Wrencher's and Scarbrough's testimony should have been excluded pursuant to M.R.E. 404(b) and 608(b) because it introduced evidence of Eakes' character by use of prior bad acts and specific instances of conduct which were unduly prejudicial.

b. Kimberly Scarbrough's Testimony
Kimberly Scarbrough testified that Eakes had exposed himself to her and her daughter. Eakes lodged no objection and thoroughly cross-examined the witness. The State first notes Eakes' lack of objection at trial, then submits that this testimony was proper rebuttal; therefore, no finding of prejudicial value versus probative value was necessary. The State says it did nothing more than enter the door opened by Eakes.
Although Eakes was slow to object when the State questioned him about any perversions during cross-examination, he did eventually object. The trial court sustained the objection and instructed the jury to disregard this line of questioning. When the prosecutor suggested that he might be allowed to call the witness Scarbrough to rebut Eakes' denial of perversion, the court observed that it would be permissible in light of the delayed objection. Eakes made no objection to the prosecution's suggestion or the court's indication of acquiescence. That is, not only did Eakes not object when Scarbrough was called but he failed to object when the prosecutor first broached the subject of her being called or to note any exception whatever to the court's indication that it would be admissible. Any error was waived by Eakes' failure to object to Scarbrough's testimony. Robinson v. State, 585 So.2d 735, 737 (Miss. 1991); M.R.E. 103(a)(1).

c. Cleveland Earl Wrencher's Testimony
On direct examination, Eakes said he had never had a venereal disease and had never been treated for such a disease. He also presented testimony from two women with whom he had been sexually intimate, Sharon Spears and Tammy Herring, to the effect that they had not been infected with venereal disease as a result of their sexual relations with Eakes. In rebuttal, the State offered testimony of Cleveland Earl Wrencher. Wrencher testified that Eakes had said, while in jail, that he wasn't worried about the charges pending against him because he and his girlfriend had been checked, and he had received an injection. Eakes' objections on the grounds of hearsay and relevancy were overruled. The State claims Wrencher's testimony was properly allowed pursuant to M.R.E. 404(a)(1) as rebuttal.
M.R.E 404 does not apply here because Wrencher's testimony concerns neither Eakes' character nor a crime, wrong, or act tending to reflect on Eakes' character. M.R.E. 608(a) is also inapplicable as Wrencher's testimony did not involve his opinion as to Eakes' reputation for truthfulness or untruthfulness.
Instead, the situation is more akin to that presented in Pinkney v. State, 538 So.2d 329 (Miss. 1988), vacated on other grounds, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990), and Lewis v. State, 580 So.2d 1279 (Miss. 1991). In Pinkney, the defendant claimed he had confessed only because a deputy held a gun to his head. Another officer testified that he had never seen that deputy carry a gun. This Court held that the second officer's testimony was a statement of fact, rather than reputation or character evidence. Pinkney, 538 So.2d at 348. In Lewis, the defendant faced charges of aggravated assault with a gun. Lewis claimed he had acted in self-defense, taking the gun from the victim who was the initial aggressor. He further testified that he had not had a gun in his possession on the night *869 of the incident or several days prior to the incident. On rebuttal, the State called a witness who testified that Lewis had visited her three days before the assault and exhibited a gun in his possession. On appeal, this Court found this testimony was not introduced as a specific instance of conduct to impeach Lewis' credibility nor was it impeachment on a collateral issue. "Who had a gun and who was the aggressor was [a] central factual issue." Lewis, 580 So.2d at 1288. Comparing the situation to that in Pinkney, this Court found the testimony admissible as a statement of fact relative to the merits of the case. Lewis, 580 So.2d at 1288.
Applying the reasoning of Pinkney and Lewis to the instant case, whether Eakes had been infected with venereal disease was relevant to the merits of the case. Eakes sought to prove he had never had venereal disease; and, therefore, could not have given it to April, nor had he likely had sexual contact with April, else he would have become infected. Wrencher's testimony; therefore, constitutes a statement of fact relevant to the merits of the case. Wrencher's testimony was properly admitted.

I. Whether the trial court erred in allowing the testimony of the three Myers children.

1. The Parties' Contentions
Eakes claims June Myers could not understand the questions asked, could not frame answers, and was not sufficiently responsible to tell the truth. The State responds that M.R.E. 601 proclaims every person competent to be a witness and the trial court properly so found in the case of June Myers.

2. Analysis
M.R.E. 601 provides that every person, subject to certain exceptions not applicable in the instant case, is competent to be a witness. M.R.E. 601. See also Ryan v. State, 525 So.2d 799, 801 (Miss. 1988). Competency of a witness is to be determined by the trial court, in its discretion. Bowen v. State, 607 So.2d 1159, 1160 (Miss. 1992). Given M.R.E. 601, the trial judge's focus should be on the proffered testimony, its relevance, and its prejudicial versus probative value. Bowen, 607 So.2d at 1161 (citing Ivy v. State, 522 So.2d 740, 742 (Miss. 1988)).
Eakes claims the children were incompetent to testify because of the inconsistencies between their early accusations against Tom Greer and their subsequent retractions of these allegations. This is insufficient to find a person incompetent to testify. June, the only one of the children whose competency as a witness was questioned by Eakes at trial, was examined through witness voir dire by the circuit clerk at the trial court's direction, by the district attorney, and by the trial judge prior to offering any testimony. She indicated that she understood what it meant to tell the truth and promised to tell the truth in court. The trial court found her competent to be a witness. Pursuant to M.R.E. 601, June was competent to be a witness. There is no abuse of discretion here.

J. Whether the trial court erred by allowing the State to lead the child witnesses.

1. The Parties' Contentions
Eakes contends the trial court erred in allowing the State to lead the three child witnesses on cogent points. The State claims this Court has sanctioned the leading of child witnesses in order to develop a complete and coherent accounting of events.

2. Analysis
M.R.E. 611 provides that the use of leading questions on direct examination should be limited to circumstances where necessary to develop the witness' testimony. However, the "classic example" of a situation ripe for leading questions on direct is where the witness is a child. Jones v. State, 606 So.2d 1051, 1059 (Miss. 1992). This Court has cautioned against the continued use of leading questions on cogent points, with a child witness, but this admonition was based on the combination of leading questions on direct, witness equivocation on cross, and subsequent reconstitution of the witness via questions from the bench. Thompson v. State, 468 So.2d 852, 853-54 (Miss. 1985). The crux of the problem in Thompson was that the trial judge, following cross-examination, *870 sua sponte initiated questioning which was "very likely to be interpreted by the jury as the court's approval of the witness and her testimony, thereby lending unity to it and thus diverting the jurors' attention from their responsibility of deciding the case from the evidence, untainted, as heard by them from the witness stand." Thompson, 468 So.2d at 854. This situation is not presented by the case sub judice, therefore the leading of child witnesses does not warrant reversal.

K. Whether the trial court erred by excluding relevant evidence offered by Appellant.

1. The Parties' Contentions
Eakes contends that the Myers children's testimony regarding their alleged sexual relationships with Tom Greer and the existence and source of their venereal diseases should have been allowed pursuant to M.R.E. 412. Eakes asserts that his failure to make a written request fifteen days prior to trial should have been excused because the evidence was newly discovered and Eakes had used due diligence. Eakes further argues that Martha Scarbrough's testimony regarding the Myers' relationships with their father, Margie Eakes' testimony regarding the burning of Lewis Myers' house, and Debbie Quick's testimony regarding her relationship with Eakes should have been allowed as relevant and probative.
The State answers, regarding the Myers children's alleged sexual relationships with Tom Greer and the existence and source of their venereal diseases, that Eakes did not follow the procedure required by M.R.E. 412(b)(2)(A) and that such evidence is irrelevant. Nonetheless, according to the State, Eakes was allowed to explore this area on cross-examination of April Myers. Concerning the burning of Lewis Myers' house, the State contends Eakes was allowed to cross-examine April Myers on this matter also. Finally, the State claims Scarbrough's testimony concerning the Myers children's relationship with their father and Kirkland's testimony regarding her relationship with Eakes were properly excluded because irrelevant.

2. Analysis
Although any sexual relationships between Shawn and Tom or June and Tom were not relevant to the charges for which Eakes was on trial, such evidence was presented, at least as to Shawn. Evidence admissible pursuant to M.R.E. 412 was admitted, despite Eakes' failure to comply with the requirements of the rule. There is no merit to this issue. Testimony regarding the Myers children's relationships with their father simply is not relevant to this case, which is in accord with the trial court's determination following a proffer of Martha Scarbrough's testimony. There is no error here.
Eakes attempted to show that April named Eakes as her abuser because she thought he was responsible for the fire which burned the Myers' house. However, the record reveals that the Myers' house burned after Eakes had been arrested as a result of April's accusations. Nonetheless, Eakes was allowed to ask April on cross if she had been told that he burned the house; she denied having been told Eakes was responsible for the fire. Additional testimony from Margie Eakes regarding the burning of the Myers' house was inadmissible because irrelevant. There is no error here.
Eakes was not allowed to present Debbie Quick's testimony that she had lived with Eakes while he was married to her mother and he had never abused her. Again, the trial court properly sustained the State's relevancy objection and did not err in refusing to allow this testimony.

L. Whether the trial court erred by granting instructions S-1, S-3, and S-4 and by denying instruction D-10.

1. The Parties' Contentions
Eakes contends instructions S-1, S-3, and S-4 did not fully and correctly state the law, were confusing and misleading, were inadequate, or charged the jury on specifics missing from the indictment. Particularly, Eakes claims S-1 does not completely state the elements of either sexual battery or attempt and does not track the statute. Of S-3, Eakes complains that it is peremptory. S-4, according to Eakes, served only to confuse *871 the jury because consent was not an issue. Instruction D-10, as per Eakes, would have charged the jury on all elements of attempt.
The State claims the instructions given, when read together, adequately and accurately instructed the jury on the law of this case.

2. Analysis
The specific instructions in question are located in Appendix 1. The law on sexual battery is clear. The elements of sexual battery are sexual penetration of a child under the age of fourteen years. Miss. Code Ann. § 97-3-95 (Supp. 1994). Sexual penetration, for purposes of § 97-3-95, includes "any penetration of the genital or anal openings of another person's body by any part of a person's body, and insertion of any object into the genital or anal openings of another person's body." Miss. Code Ann. § 97-3-97 (1994). Instruction S-1, in combination with Instruction S-3, completely and correctly states the elements of sexual battery.
Attempted sexual battery requires a design and endeavor to sexually penetrate a child under the age of fourteen years, an overt act toward commission of the offense, and failure or prevention of completion. Miss. Code Ann. § 97-1-7 (Supp. 1994). Instruction S-1 required that the jury find as an overt act Eakes' attempt to place his penis into April's anus. While this instruction does not mention failure or prevention of completion, Instruction D-9, which was given, charged the jury that "in order to prove an attempt to commit sexual penetration, the State must prove that the intended act was prevented from taking place by resistance or by other means." In combination, these instructions fully and correctly charged the jury on the elements of attempted sexual battery.
This Court does not review jury instructions in isolation. Malone v. State, 486 So.2d 360, 365 (Miss. 1986). All instructions are to be read together and if the jury is fully and fairly charged by other instructions, the refusal of any similar instruction does not constitute reversible error. Lee v. State, 529 So.2d 181, 183 (Miss. 1988). Refusal of a repetitive instruction is proper. Allman v. State, 571 So.2d 244, 252 (Miss. 1990). Although Eakes' proffered D-10 would also have properly charged the jury on the elements of attempted sexual battery, there was no error in failing to give this cumulative instruction.
Despite Eakes' contention to the contrary, Instruction S-3 is not peremptory. This instruction merely defines "sexual penetration" as it applied in this case. And while Eakes did not raise consent as a defense, submission of Instruction S-4, regarding the impossibility of consent of a child younger than fourteen years, was not error.

M. Whether the trial court erred in denying Appellant's peremptory instruction, motion for JNOV, or for new trial.

N. Whether the verdict is against the overwhelming weight of the evidence.

1. The Parties' Contentions
Eakes claims that his peremptory instruction, D-8, should have been granted because the evidence, even viewed most favorably to the State, shows only that the three child witnesses had venereal diseases, that all three were "confirmed liars," and that Eakes and his "sex partner" had no venereal diseases. For these same reasons, Eakes contends failure to grant either JNOV or new trial is reversible error. In sum, Eakes argues that the evidence presented does not support a guilty verdict. The State contends the evidence presented at trial is sufficient to support the verdict and no reasonable juror could have found Eakes not guilty.
Eakes contends the verdict is against the overwhelming weight of the evidence because the State's "star witness was an admitted liar who gave at least three differing versions of the events allegedly involving Ricky [Eakes]." Only because "[t]he jury was swayed by the sordid accounts from the children" was Eakes convicted, according to him. Again, the State claims the evidence is sufficient to support the guilty verdict and no reasonable juror could have found Eakes not guilty.

2. Analysis
Eakes' peremptory instruction, motion for JNOV, and motion for new trial *872 assail the legal sufficiency of the evidence. This Court must review the trial court's finding regarding sufficiency of the evidence at the time the motion for JNOV was overruled. See Wetz v. State, 503 So.2d 803, 807-08 (Miss. 1987). The evidence is viewed in the light most favorable to the State. All credible evidence supporting the conviction is taken as true; the State receives the benefit of all favorable inferences reasonably drawn from the evidence. McClain v. State, 625 So.2d 774, 778 (Miss. 1993). Issues regarding weight and credibility of the evidence are for the jury to resolve. Id. Only where the evidence, as to at least one of the elements of the crime charged, is such that a reasonable and fair minded jury could only find the accused not guilty, will this Court reverse. Id.
"The standard of review of a post-trial motion is abuse of discretion." Flowers v. State, 601 So.2d 828, 833 (Miss. 1992) (citing Robinson v. State, 566 So.2d 1240, 1242 (Miss. 1990)). This Court will order a new trial only when it is convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. McNeal v. State, 617 So.2d 999, 1009 (Miss. 1993); Burrell v. State, 613 So.2d 1186, 1191 (Miss. 1993).
In determining whether a jury verdict is against the overwhelming weight of the evidence, just as when determining whether a peremptory instruction is proper, this Court accepts as true all evidence which supports the verdict and will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial. Allred v. State, 605 So.2d 758, 760 (Miss. 1992); Nicolaou v. State, 612 So.2d 1080, 1083 (Miss. 1992). Factual disputes are properly resolved by the jury and do not mandate a new trial. McNeal, 617 So.2d at 1009.
April testified that Eakes had sexually abused her on three occasions and described anal and digital penetration, attempted anal penetration, and attempted cunnilingus. She further testified that Eakes had threatened to harm other members of her family if she told anyone about the abuse. June, Shawn, Palmer, and McKee substantially corroborated April's testimony. Dr. Lorenzana testified that April had, just after the last incident complained of, been treated for gonorrhea and chlamydia in her mouth, chlamydia in her vagina, and gonorrhea in her anus. Any questions regarding weight and worth of witness testimony or witness credibility were for the jury to resolve. No unconscionable injustice is sanctioned by allowing the jury verdict to stand; the evidence does not lead to the conclusion that no reasonable jury could have found Eakes guilty. Nothing here warrants reversal by this Court.

O. Whether Appellant suffered ineffective assistance of counsel.

1. The Parties' Contentions
Eakes, who is represented on appeal by the same lawyer who defended him at trial, claims he suffered ineffective assistance of counsel because his attorney failed to make objections, did not make a fifteen-day motion under M.R.E. 412, did not make an opening statement, failed to provide an instruction as to the theory of the defense, and did not handle jury selection well. Eakes asks that this Court provide relief by finding plain error pursuant to M.R.E. 103(c).
The State claims Eakes suffered no prejudice because his attorney failed to file his fifteen-day motion pursuant to M.R.E. 412, that the twenty pre-trial motions filed by the defense indicate sufficient preparation for trial, and that counsel objected frequently at trial on Eakes' behalf.

2. Analysis
To successfully claim ineffective assistance of counsel the defendant must meet the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), and adopted by this Court. Knight v. State, 577 So.2d 392, 394 (Miss. 1991). This test requires a showing of (1) deficiency of counsel's performance (2) sufficient to constitute prejudice to the defense. McQuarter v. State, 574 So.2d 685, 687 (Miss. 1990). The burden to demonstrate both prongs is on the defendant who faces a strong but rebuttable *873 presumption that counsel's performance falls within the broad spectrum of reasonable professional assistance. McQuarter, 574 So.2d at 687. This Court must determine whether counsel's performance was both deficient and prejudicial based upon the totality of the circumstances. Carney v. State, 525 So.2d 776, 780 (Miss. 1988). Only where there is a reasonable probability that without counsel's errors the outcome of the trial would have been different will this Court find ineffective representation. Reed v. State, 536 So.2d 1336, 1339 (Miss. 1988) (citing Cabello v. State, 524 So.2d 313, 315 (Miss. 1988)).
The record is replete with objections lodged by defense counsel, yet he now claims failure to object but provides no specifics. Consequently, he has failed to meet the burden of demonstrating either prong of the Strickland test.
Admittedly, counsel's failure to make a fifteen-day motion pursuant to M.R.E. 412 constitutes deficient performance. However, he has not and cannot show any prejudice as a result of this deficiency as the evidence he sought to have admitted was in fact admitted. See discussion at issue K, above.
Even if counsel's decision to refrain from making an opening statement is deemed deficient performance rather than trial strategy, no effort is made to show how this "deficiency" prejudiced Eakes. Again, Eakes fails to meet the burden of demonstrating both prongs of the Strickland test.
Regarding the failure to offer an instruction on the theory of the defense and his inadequacy in jury selection, counsel offers only "[n]o instruction as to the theory of defense was made" and counsel "did not handle jury selection well." Not only is neither prong of Strickland met, but counsel has not attempted to rebut the presumption that his performance falls within the broad spectrum of reasonable professional assistance. McQuarter, 574 So.2d at 687. There is no error here.

P. Whether the trial court erred in the determination of Appellant's sentence.

1. The Parties' Contentions
Eakes contends the trial judge considered irrelevant matter and unreliable hearsay and relied on same in setting Eakes' sentence. Specifically, Eakes points to Garth Tindle's testimony regarding Eakes' illegal conduct, immoral acts, and child abuse and the medical conditions of the three Myers children. The State notes that Eakes' sentences are within statutory limits and claims the trial court merely relied upon evidence presented at trial in its determination.

2. Analysis
In Corley v. State, 536 So.2d 1314, 1319 (Miss. 1988), the appellant, Corley, claimed the trial court had, in sentencing, impermissibly considered improper comments by the prosecutor and a collateral criminal charge pending against Corley. This Court stated: "It is well settled in this State that the imposition of sentence in a criminal proceeding is within the sole discretion of the trial judge, and that this Court will not reverse a sentence where it is within the limits prescribed by statute." Corley, 536 So.2d at 1319.
The maximum penalty for sexual battery, first offense, is thirty years. Miss. Code Ann. § 97-3-101 (1994). Eakes was sentenced to two consecutive twenty-year sentences for his two sexual battery convictions. Miss. Code Ann. § 97-1-7 (Supp. 1994) provides that the penalty for attempt, as applicable to the instant case, shall be "a period ... not greater than is prescribed for the actual commission of the offense so attempted." In other words, a maximum thirty year sentence is also available for attempted sexual battery. Eakes received a concurrent twenty year sentence for his attempt conviction. In sum, Eakes' sentences are within the statutory limits; therefore, this Court affirms.

Q. Whether the trial court erred in its determination of the attorney fee approved for Appellant's trial counsel.

1. The Parties' Contentions
Eakes contends that the trial judge erred in providing his defense counsel only $15.00 per hour above the statutory $1,000.00. Since no proof was presented regarding actual costs, Eakes claims the trial judge should have employed the presumption that the actual costs were $25.00 per hour. The State *874 claims the trial court made a fair decision on defense counsel's expense allowance based on the hours expended and counsel's actual expenses.

2. Analysis
Following trial and sentencing, a fee hearing was held. Defense counsel was allowed the $1,000.00 statutory maximum for non-capital cases and a $15.00 per hour allowance for overhead for 139 1/2 hours. The $15.00 per hour amount was reached by the trial judge after counsel's monthly overhead expenses were presented. The trial court noted that counsel's actual overhead expenses were less than $10,000.00 a year while the $25.00 per hour figure provided in Wilson v. State, 574 So.2d 1338 (Miss. 1990) and Pruett v. State, 574 So.2d 1342 (Miss. 1990) was based on annual overhead expenses of $52,000.00. The court concluded that the presumption of $25.00 per hour for overhead expenses had been rebutted and awarded defense counsel $15.00 per hour. Defense counsel now claims that no proof rebutting the $25.00 per hour figure was produced or, alternatively, that the judge rather than the State produced proof to rebut the $25.00 per hour figure.
In Wilson, this Court created a rebuttable presumption that an appointed attorney's overhead expenses are $25.00 per hour. However, the trial court is bound by this only in the absence of actual proof to the contrary  proof offered by the lawyer that it is more or by the State that it is less. Wilson, 574 So.2d at 1340-41. Although proof in the instant case that defense counsel's expenses were less than $25.00 per hour was offered by defense counsel himself rather than by the State, the presumption was nonetheless rebutted. There is no error here.

R. Whether, despite the lack of objections at trial, the record reflects plain error regarding admission of hearsay, admission of prior bad acts, and admission of prejudicial and irrelevant testimony.

S. Whether Appellant was denied a fair trial by the accumulation of errors.
A careful and thorough examination of the record reveals neither plain error nor denial of a fair trial by accumulation of errors.

IV. CONCLUSION
Finding no error warranting reversal, Eakes' conviction and sentence are hereby affirmed.
COUNT I: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, PAY A FINE OF $10,000.00 AND COURT COSTS OF $165.00 AFFIRMED.
COUNT II: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY YEARS AFFIRMED. COUNT II TO RUN CONSECUTIVE TO COUNT I.
COUNT III: CONVICTION OF ATTEMPTED SEXUAL BATTERY AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT III TO RUN CONCURRENT WITH COUNTS I AND II.
HAWKINS, C.J., and PITTMAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
McRAE, J., concurs in result only.
DAN M. LEE, P.J., dissents with separate written opinion joined by SULLIVAN, J.

APPENDIX 1  JURY INSTRUCTIONS AT ISSUE
S-1 read as follows:
COUNT I
The Court instructs the Jury, as to Count I, that should you find beyond a reasonable doubt from the evidence in this case that:
1. Between Dec. 1 and the 26th day of December, 1990, in Kemper County, Mississippi;
2. the Defendant, Ricky Gene Eakes, did wilfully and unlawfully engage in sexual *875 penetration with April Myers, a female child under the age of fourteen (14) years, by the act of anal sexual intercourse;
then it is your sworn duty to find the Defendant guilty of Sexual Battery in Count I.
Should the State fail to prove any one (1) or more of these elements beyond a reasonable doubt then you shall find the Defendant not guilty under Count I.
COUNT II
The Court instructs the Jury, as to Count II, that should you find beyond a reasonable doubt from the evidence in this case that:
1. Between the 26th day of January, 1991, and April 30, 1991 in Kemper County, Mississippi;
2. the Defendant, Ricky Gene Eakes, did wilfully and unlawfully engage in sexual penetration with April Myers, a female child under the age of fourteen (14) years, by the act of anal sexual intercourse;
then it is your sworn duty to find the Defendant guilty of Sexual Battery in Count II.
Should the State fail to prove any one (1) or more of these elements beyond a reasonable doubt then you shall find the Defendant not guilty under Count II.
COUNT III
The Court instructs the Jury, as to Count III, that should you find beyond a reasonable doubt from the evidence in this case that:
1. On or about the 11th day of May, 1991, in Kemper County, Mississippi;
2. the Defendant, Ricky Gene Eakes, did wilfully and unlawfully attempt to engage in sexual penetration with April Myers, a female child under the age of fourteen (14) years, by the act of attempting to place his penis into her anus.
then it is your sworn duty to find the Defendant guilty of attempted Sexual Battery in Count III.
Should the State fail to prove any one (1) or more of these elements beyond a reasonable doubt then you shall find the Defendant not guilty under Count III.
S-3 read as follows:
The Court instructs the Jury that "sexual penetration" as used in these instructions is defined by statute and includes the act of inserting the penis into the anus. This is anal sexual intercourse.
S-4 read as follows:
The Court instructs the Jury that a person under the age of fourteen (14) years is not capable of giving consent to any sexual penetration. Therefore, consent is not a defense to the crime of sexual battery where the victim is younger than fourteen (14) years.
D-10 read as follows:
COUNT I
The Court instructs the jury that, in order to find the Defendant, Ricky Gene Eakes, guilty of the charge of sexual battery, you must first find, beyond a reasonable doubt, from the evidence in this case that:
1. On or about December 26, 1990,
2. in Kemper County, Mississippi,
3. the Defendant, Ricky Gene Eakes, engaged in sexual penetration with April Myers,
4. a female child under the age of fourteen (14) years,
5. by the act of penis-anal intercourse. The State must prove each of these elements beyond a reasonable doubt. Should the State fail to prove any one (1) or more of these elements beyond a reasonable doubt, then you shall find the Defendant, Ricky Gene Eakes, to be not guilty, of Count I.
COUNT II
The Court instructs the jury that, in order to find the Defendant, Ricky Gene Eakes, guilty of the charge of sexual battery, you must first find, beyond a reasonable doubt, from the evidence of this case, that:

*876 1. On or about January 26, 1991,
2. in Kemper County, Mississippi,
3. the Defendant, Ricky Gene Eakes, engaged in sexual penetration with April Myers,
4. a female child under the age of fourteen (14) years,
5. by the act of penis-anal intercourse.
The State must prove each of these elements beyond a reasonable doubt. Should the State fail to prove any one (1) or more of these elements beyond a reasonable doubt, then you shall find the Defendant, Ricky Gene Eakes, to be not guilty of Count II.
COUNT III
The Court instructs the jury that, in order to find the Defendant, Ricky Gene Eakes, guilty of the charge of attempted sexual battery, you must first find, from the evidence in this case, beyond a reasonable doubt, that:
1. On or about May 11, 1991,
2. in Kemper County, Mississippi,
3. the Defendant, Ricky Gene Eakes,
4. intended to engage in sexual penetration with April Myers,
5. a female child under the age of fourteen (14) years,
6. by the act of inserting his finger or fingers in her vagina,
7. and committed a direct, ineffective act toward the commission of that act,
8. but was prevented from so doing,
9. and the act was not committed.
The State must prove each of these elements beyond a reasonable doubt. Should the State fail to prove any one (1) or more of these elements beyond a reasonable doubt, then you shall find the Defendant, Ricky Gene Eakes, to be not guilty, of Count III.
DAN M. LEE, Presiding Justice, Dissenting:
Ricky G. Eakes was convicted of two counts of sexual battery and one count of attempted battery by a jury in Kemper County, Mississippi, and sentenced to a term of imprisonment of forty years. Eakes appealed to this Court, requesting review of nineteen issues most of which I believe have little, if any, merit. However, today the majority is expanding our exceptions to the hearsay rule to a point that I cannot accept, and in affirming Eakes' conviction, acquiesces to the use of unnecessary bolstering testimony. Because I find the majority's position unacceptable, I respectfully dissent.
Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Miss. R.Evid. 801. Hearsay is inadmissible, and Dr. Lorenzana's testimony as to what April told her in the case sub judice, is clearly hearsay unless it fits within one of the exceptions provided by the Mississippi Rules of Evidence. Miss.R.Evid. 802. The majority today reasons that Dr. Lorenzana's testimony was properly admitted under Miss. R.Evid. 803(4).
This exception provides:

Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness. For purposes of this rule, the term medical refers to emotional and mental health as well as physical health.
Miss.R.Evid. 803(4).
This Court has interpreted this exception to allow statements of "causation and fault [and it] has been expanded to include the identity of the perpetrator in child abuse cases." Jones v. State, 606 So.2d 1051, 1056 (Miss. 1992). This exception was expanded further by this Court in Doe v. Doe, to include non-resident parents whose visitation *877 rights were at issue. Doe v. Doe, 644 So.2d 1199, 1206 (Miss. 1994). Today, this Court removes almost all of the limits placed on statements made by a child sexual abuse victim when identifying the alleged perpetrator. Holding that a child's statement, identifying a family friend or stranger as the perpetrator, is as reliable and pertinent to treatment as a child's statement identifying a resident family member or someone with whom the child has regular contact is, I believe, a step too far.
Children have vivid imaginations and are easily manipulated by others. To accept a child's accusations made against a parent, a loved one or a household resident, under Miss.R.Evid. 803(4), is understandable and acceptable. But to readily accept, as pertinent and especially reliable, an accusation made against an acquaintance or total stranger causes me grave discomfort. In addition, the Rule does not require the trial court to make on-the-record findings regarding the pre-requisites to admission outlined in Miss.R.Evid. 803(4), and strongly recommended in Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). Without such precautions, the court and the defendant are at greater risk that hearsay testimony may be admitted under this exception which presents false accusations against someone that a child could more easily place blame upon. In addition, in the case sub judice, April testified and there was no need for the additional testimony from Dr. Lorenzana as to April's identification of Eakes as the perpetrator.
The majority, in today's opinion, acquiesces in the use of cumulative testimony which improperly bolstered the State's case against Eakes. As noted above, April Myers testified at trial as to who had sexually abused her. The testimony of Linda Palmer, Detective McKee and Dr. Lorenzana concerning the identification of April's perpetrator was cumulative, unnecessary and prejudicial against Eakes. Once the victim had testified, the jury should have been permitted to weigh for themselves her testimonial credibility. Once the other testimony was admitted, it was April et als against Eakes. April's credibility was improperly bolstered by the cumulative evidence and this may have played a direct role in the jury's verdict.
The court's of this state have an obligation to safeguard the rights of the accused to receive a fair trial. The Mississippi Rules of Evidence are designed to effectuate this goal by providing a framework from within which the courts and the parties must work. Today, I fear that this Court has stretched the hearsay exceptions too far and has also consented to the use of needless, cumulative testimony at the risk of prejudice to the defendant. Accordingly, I respectfully dissent.
SULLIVAN, J., joins this opinion.
NOTES
[1] An additional count of sexual battery was dismissed by the trial court.
[2] Appellant's issues have been re-ordered for organizational purposes.
[3] The names of the parties to this case, as well as the names of other individuals involved, have been changed to protect the anonymity of the parties' minor children.
[4] Although the Myers children referred to Marianne as their step-mother she was actually Lewis Myers common-law wife.
[5] Repeated anal penetration typically results in looser sphincter tone. However, a single incident of anal penetration may not be discovered by physical exam six days later.
[6] Outside the presence of the jury it was revealed that Palmer did believe June's remark concerning Eakes putting his fingers down her throat, although Palmer speculated it was actually Eakes' penis, since the child had venereal disease in her throat.
[7] A footnote in Corley provides that "[w]hether the evidence would be admissible under this rule [M.R.E. 404(b)] has no bearing on whether the trial court should allow a multi-count indictment." Corley, 584 So.2d at 772 n. 1.
[8] Evidence of all offenses would be admissible in separate trials, under M.R.E. 404(b), to show plan or, as to the attempt charge, intent.
[9] The three offenses occurred over a period of nine months. Allman, 571 So.2d at 245-46.
[10] In accord with Corley, the Allman court also found that evidence proving each count would have been admissible at separate trials. Allman, 571 So.2d at 248.
[11] The chancellor met with both the district attorney and defense counsel and signed the order at 8:30 a.m. on the Monday morning trial began.
[12] See Miss. Code Ann. § 43-21-261(1)(c), (d) and (2), and (5)(b) (Supp. 1994).
[13] The M.R.E. 412 claim is addressed herein, at issue K, with a conclusion that Eakes was not prevented from offering any evidence at trial as a result of his failure to file a fifteen-day motion.
[14] When Palmer showed June the male and female dolls, she showed no reaction. When the male doll was undressed, June threw it on the floor and said "That's Ricky," and then ran into a closet.
[15] On appeal, Eakes complains only of hearsay concerning "tales" of abuse of April and June and Shawn's alleged sexual relations with Tom Greer. Any evidence regarding abuse of Shawn by Tom would be exculpatory to Eakes, therefore is not addressed.
[16] Although Eakes claims the trial court erred by not requiring Lorenzana to show that the hearsay offered by her was obtained for purposes of medical diagnosis and treatment, the record reveals otherwise.
[17] The State's relevancy objection was overruled.