[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1070 
¶ 1. Willie C. Marshall was indicted by the grand jury on two counts: Count I-capital rape and Count II-sexual battery. The State elected to call up Count II-sexual battery for trial. Marshall filed a pre-trial motion to suppress his statement given to law enforcement officers with the Circuit Court of Tallahatchie County, Mississippi. The motion was denied.
 ¶ 2. Following a jury trial on February 7-9, 2000, Honorable Andrew C. Baker presiding, Marshall was convicted of the crime of sexual battery. Marshall was thereafter sentenced to twenty years in the custody of the Mississippi Department of Corrections, with five years suspended pending good behavior. Marshall appeals from his conviction citing the following issues to be addressed:
 1. Whether the trial court erred in overruling Marshall's motion to suppress his statements to law enforcement officers confessing to the sexual battery of the victim?
 2. Whether the trial court erred in allowing inadmissible hearsay during the State's case in chief?
 FACTS ¶ 3. Marshall was found guilty by a jury of his peers of the crime of sexual battery against a female child, D.B., who was ten years old at the time of the incident. The jury heard testimony that D.B. and D.B.'s mother had, in the past, seen Marshall loitering around the area close to their home, hanging out and smoking cigarettes. Evidence was also presented at trial that, on the afternoon of Friday, October 16, 1998, while D.B. was on her way home from school, Marshall came out from behind some bushes and accosted D.B. Marshall dragged D.B. into the bushes with him, laid her face down on the ground and penetrated her anus with his penis. D.B. described the events by saying that Marshall touched her private parts with his private part and that he put his private part into her bottom.
 ¶ 4. D.B. testified that she did not tell anyone what had happened to her until the *Page 1071 
following Monday. At that time, she disclosed how she was accosted and raped by Marshall to her school nurse, Sherry Petit. Petit then called D.B.'s mother and asked her to come to the school. Petit also called the police department to tell them what had happened to D.B. and the identity of Marshall, whom D.B. had accused of the sexual battery against her. Upon the mother's arrival at the school that Monday, Petit repeated D.B.'s account of the ordeal to D.B.'s mother. D.B.'s mother immediately took her daughter to the hospital for examination. There, D.B. encountered Debra Beavers, an emergency room nurse, and Angela Blount, a medical technologist, who both examined D.B. and listened to D.B. communicate, yet again, what Marshall had done to her the previous Friday. D.B. also disclosed this information to Linda Chidester, a medical doctor who began seeing D.B. as a patient on October 21, 1998. Chidester was tendered as an expert witness for the State in the field of family medicine with a special emphasis in the area of child sexual abuse.
 ¶ 5. Hearings were held outside the presence of the jury to determine whether the statements of Petit, Beavers, Blount and Chidester were admissible at trial under exceptions to the hearsay rule. After hearing arguments from both the prosecution and defense, the trial court held that the testimony of these witnesses were admissible under M.R.E. 803(4), the medical diagnosis exception and 803(25), the tender years exception. The testimony of Petit, Beavers, Blount and Chidester regarding what D.B. had told them about the events of October 16, 1998, including the identity of Marshall, was subsequently heard by the jury. The statements of these four witnesses recounting D.B.'s version of the events revealed that D.B. had been consistent in her account of the incident that took place on October 16, 1998. It was also declared that, from a medical standpoint, D.B. suffered from trauma associated with the sexual battery and exhibited definite signs of a child who has been sexually abused.
 ¶ 6. The jury also heard the testimony of John Page, a deputy with the Tallahatchie County Sheriff's Department. Page was the officer involved in the investigation of D.B.'s complaint against Marshall. Page testified that Marshall was arrested and placed in jail for his crime against D.B. on October 19, 1998. Page further stated that on October 21, 1998, he was told by a trusty that Marshall wanted to speak with him. Page testified that after Marshall was brought to see him, Page gave Marshall his Miranda warnings before Marshall began to talk. There was no testimony or other evidence that Marshall ever asked for the presence of his attorney before he gave his statement to Page. Page testified that Marshall waived his Miranda rights in writing and then began to confess to having sex with D.B. on October 16, 1998. Page stated that, at the time that Marshall was giving this statement, Marshall appeared to be coherent and showed no signs of being under the influence of any drugs or medication. He testified that Marshall had not been threatened or coerced into confessing to the crime of sexual battery against D.B. or making any other statements. After Marshall's confession was typed and Page read the contents to Marshall paragraph by paragraph, Marshall signed the confession voluntarily.
 ¶ 7. Marshall now claims that he did not give the confession knowingly and voluntarily. Rather, he asserts that he was under the influence of medication, specifically Mellaril, a drug that he revealed had been prescribed for him for his mental well-being. Marshall contends that because of this drug, he did not know what he was signing and he did not know he was *Page 1072 
executing something that would "hurt" him. He therefore claims that his confession should be suppressed. However, Page testified that he was not aware that any medications had been given to Marshall in the two days that Marshall had been in jail. Marshall admitted that he had not been given Mellaril or any other drug while in jail for those two days, but still charges that the drug was still in his system and that, as a result, he was not in a lucid state when he signed the confession presented to him and read to him by Page. The trial judge denied Marshall's pre-trial motion to suppress his confession. The jury weighed the conflicting testimony of Page and Marshall and apparently found that Page was the more credible witness. After hearing all the testimony and evidence presented to them, the jury returned with a guilty verdict against Marshall for the crime of sexual battery.
 STANDARD OF REVIEW ¶ 8. Where the lower court has denied a defendant's motion to suppress his confession, this Court is confined to certain limits in our scope of review. Greenlee v. State, 725 So.2d 816, 825 (Miss. 1998);McGowan v. State, 706 So.2d 231, 235 (Miss. 1997); Morgan v. State,681 So.2d 82, 87 (Miss. 1996). In resolving the question of admissibility of such a confession, this Court may reverse the trial court's ruling only when that ruling is "manifestly in error or contrary to the overwhelming weight of the evidence." McGowan, 706 So.2d at 235 (quotingWhite v. State, 495 So.2d 1346, 1347 (Miss. 1986)) (quoting Cabello v.State, 490 So.2d 852, 856 (Miss. 1986)). If the lower court finds that the defendant's confession was voluntary and admissible, we must determine that the lower court applied the proper legal standards and that the court's conclusions were factually supported by the evidence.Greenlee, 725 So.2d at 825; Haymer v. State, 613 So.2d 837, 839 (Miss. 1993). See also Cox v. State, 586 So.2d 761, 763 (Miss. 1991). "Where, on conflicting evidence, the court makes such findings, this Court must generally affirm." Crawford v. State, 716 So.2d 1028, 1038 (Miss. 1998) (quoting Lesley v. State, 606 So.2d 1084, 1091 (Miss. 1992)).
 ¶ 9. "The applicable standard for determining whether a confession is voluntary is whether, taking into consideration the totality of the circumstances, the statement is the product of the accused's free and rational choice." Greenlee, 725 So.2d at 826 (citing Porter v. State,616 So.2d 899, 907-08 (Miss. 1993)). See also Crawford,716 So.2d at 1037. The burden is on the prosecution to prove beyond a reasonable doubt that the confession was voluntary. Greenlee, 725 So.2d at 826; Haymer,613 So.2d at 839. A prima facie case must be made out by the prosecution by the testimony of an officer or others who are knowledgeable about the case that the confession was voluntary and there were no threats or coercion against the accused or rewards offered to him in exchange for the confession. Chase v. State, 645 So.2d 829, 838 (Miss. 1994). After such prima facie case has been made, the defense must then offer testimony in rebuttal, showing that the defendant was coaxed into confession. Stokes v. State, 548 So.2d 118, 121 (Miss. 1989). See alsoCox, 586 So.2d at 763-64.
 ¶ 10. After the lower court has determined that a confession is voluntary, the defendant is saddled with a heavy burden in attempting to have that decision reversed. Greenlee, 725 So.2d at 826; Crawford,716 So.2d at 1038; Hunt v. State, 687 So.2d 1154, 1160 (Miss. 1996); Sillsv. State, 634 So.2d 124, 126 (Miss. 1994). *Page 1073 
 ¶ 11. When determining whether to uphold or reverse the lower court's decision on the admissibility of witness testimony regarding statements made by a minor child that he or she was sexually abused or violated, this Court must assess whether the trial court used the correct legal principles and whether there was sufficient evidence to support the court's ruling. Hennington v. State, 702 So.2d 403, 415 and 417 (Miss. 1997); Eakes v. State, 665 So.2d 852, 865 (Miss. 1995). See Doe v. Doe,644 So.2d 1199, 1206 (Miss. 1994). This Court may reverse the ruling of the trial court only if we find an abuse of discretion. Hennington,702 So.2d at 415; Eakes, 665 So.2d at 865.
 LEGAL ANALYSIS 1. Whether the trial court erred in overruling Marshall's motion to suppress his statements to law enforcement officers confessing to the sexual battery of the victim?
 ¶ 12. We find that this issue simply boils down to Marshall's word against that of Page. The jury weighed all of the evidence in this case and, convinced that Page was the more credible witness, entered a verdict of guilty against Marshall. The court found that the jury's verdict was a proper one based on the evidence presented. However, Marshall asserts that he was under the influence of mind-altering drugs which he claims impaired his ability to know what he was doing when he gave his confession and signed the written form of that confession. On the other hand, Page testified that Marshall did not appear to be incoherent in any way when giving his statement to Page. Further, Page stated that he read each paragraph of the typed confession to Marshall, stopping every so often to ask Marshall if he was confused about anything or if anything was incorrect. Page testified that Marshall indicated that the confession was correct and that he understood it before signing. While we note Marshall's argument that the drug Mellaril may temporarily debilitate one's mind and may have a brief sedating effect, we also are mindful of the fact that Page testified, and Marshall admitted, that he had not been given Mellaril at any time after he was arrested and placed in jail two days before his confession.
 ¶ 13. Further, Page testified that Marshall asked to see him in order to make a statement. Marshall has presented no evidence to this Court that Page either approached him or harassed him into confessing to the crime of sexual battery against D.B. In Crawford, the Mississippi Supreme Court held that if there was conflicting evidence, such as the conflict we have here between the testimony of Page and Marshall, this Court should affirm the decision of the lower court as long as that court applied the appropriate legal principles. Crawford, 716 So.2d at 1038. We find that the court applied the appropriate legal standards here, hearing evidence on and properly evaluating the admissibility of Marshall's confession before holding that his confession was voluntary based on the prosecution's prima facie evidence. The State made out its prima facie case using the testimony of Officer Page to show that there were no threats made to Marshall, nor was there any coercion on the part of any officer to persuade Marshall to confess. Rather, Page's testimony demonstrated that Marshall wanted to talk to Page of his own volition, wherein he confessed to the crime of sexual battery against D.B.
 ¶ 14. Marshall contends in his brief that Page should not have taken his confession without his attorney present. This is simply not an accurate assertion. In Genry v. State the Mississippi Supreme *Page 1074 
Court provided that "Sixth Amendment rights are not violated by questioning in the absence of his attorney unless the defendant has asserted his right to an attorney." Genry v. State, 735 So.2d 186, 195
(Miss. 1999). See Wilcher v. State, 697 So.2d 1087 (Miss. 1997). Furthermore, there is nothing mentioned or alluded to in theSixth Amendment which would prevent an accused person of voluntarily deciding to speak with police without an attorney present. U.S. Const. amend. VI;Genry, 735 So.2d at 196. "Although a defendant may sometimes later regret his decision to speak with police, the Sixth Amendment does not disable a criminal defendant from exercising his free will." Genry,735 So.2d at 196. A defendant's rights are not triggered by any type of general questioning by the police or by a voluntary statement of the defendant.Greenlee, 725 So.2d at 825. We find no evidence in the record whatsoever that would tend to show that Marshall ever asked for his attorney throughout his entire conversation with Page on October 21, 1998, even when given his Miranda rights by Page. In fact, Marshall signed a waiver of his Miranda rights before giving to Page his confession of sexual battery against D.B.
 ¶ 15. After the State's prima facie case was made, we find that Marshall failed to meet his burden to prove to the court that his confession was anything but voluntary. Marshall attempts to convince us that he had no idea what he was saying or doing on October 21, 1998, because of the effects of the drug Mellaril. We have already addressed that we are not convinced of such an implication because it had been two days since he had ingested the drug. He even goes on to insinuate in his testimony that he could not read the typed confession because he cannot read well and the words were all bunched together, making it hard for him to distinguish exactly what the document said. Again, we find that this intimation has no foundation because Page testified that Marshall did not have to read the typed confession himself, but that Page read it to him paragraph by paragraph to be sure it was correct and that Marshall understood what was written.
 ¶ 16. It is our opinion that there was sufficient evidence presented by the State to show that Marshall's confession was voluntary and admissible. We find that the court correctly applied the law and that, taking into account the totality of the circumstances, its ruling was factually supported by the evidence presented in this case. As such, we affirm the lower court's finding that Marshall's confession was voluntary and admissible.
 2. Whether the trial court erred in allowing inadmissible hearsay during the State's case in chief?
 ¶ 17. Again, we find that the lower court applied the appropriate law when it determined that the hearsay testimony of Petit, Beavers, Blount and Chidester concerning what D.B. had told them about the events of October 16, 1998 should be allowed. The court held proceedings outside the presence of the jury to specifically address the problem of this hearsay testimony and whether it should be admitted into evidence under the medical diagnosis and tender years exceptions found in the Mississippi Rules of Evidence. M.R.E. 803(4); M.R.E. 803(25). It is our opinion that there was no abuse of discretion on the part of the lower court when it found that these statements were admissible.
 ¶ 18. We find that the testimony of Beavers, Blount and Chidester falls safely under the medical diagnosis exception to the hearsay rule. That exception provides that a "declarant's motive in making the statement must be consistent with *Page 1075 
the purposes of promoting treatment; and . . . the content of the statement must be such as is reasonably relied on by a physician in treatment." M.R.E. 803(4). See Doe, 644 So.2d at 1206; Jones v. State,606 So.2d 1051, 1056 (Miss. 1992). "[A] statement that one has been sexually abused, as well as any identification of the perpetrator, is reasonably pertinent to treatment and, therefore, reasonably relied upon by a treating physician." Hennington, 702 So.2d at 413. See Mitchell v.State, 539 So.2d 1366 (Miss. 1989). This rule was expanded to include identification of any acquaintance of the victim or any person to come into contact with the victim, not just a household member or relative.Hennington, 702 So.2d at 413-14; Eakes, 665 So.2d at 866-67. "Prevention of further abuse will always be an immediate concern, whether the perpetrator has daily, weekly, or only sporadic opportunity to abuse a child." Hennington, 702 So.2d at 414 (quoting Eakes, 665 So.2d at 867).
 ¶ 19. In accordance with this established rule, we find that, in their treatment of D.B., these three medical personnel relied on D.B.'s statements regarding the sexual battery she suffered at the hands of Marshall. Further, the evidence has shown that D.B. had come into contact with Marshall before the incident at issue here. D.B. testified that she had seen him hanging around her neighborhood. Further, D.B.'s mother knew who Marshall was and she stated that she had seen him many times smoking cigarettes in the area of their home. We find that the allowance of the testimony of Beavers, Blount and Chidester, including the identification of Marshall as the perpetrator, was appropriate for the medical diagnosis, treatment and protection of D.B.
 ¶ 20. As to other hearsay testimony regarding D.B.'s account of the events on October 16, 1998, including that of Petit, the court evaluated such testimony under M.R.E. 803(25), the tender years exception. When analyzing such testimony, the court must assess first whether the child falls into the category of one who is of "tender years." Veasley v. State, 735 So.2d 432, 434 (Miss. 1999). "Today, we hold that there is a rebuttable presumption that a child under the age of twelve is of tender years." Id. at 436. Where the child victim is twelve or older, the presumption does not exist and the court must make a case-by-case determination as to whether the child is mentally and emotionally of tender years. Id. at 437. In the recent case of McGowanv. State, this Court ruled that the relevant time to determine whether the tender years exception applies is "the age of the child at the time that the relevant statement was made" rather than the age of the child at the time testimony is given at trial. McGowan v. State, 742 So.2d 1183
(¶ 18) (Miss.Ct.App. 1999). Here, D.B. was ten years of age when the sexual battery occurred and therefore, she easily falls under the tender years exception.
 ¶ 21. Once a court determines that a child is of tender years, it then must be determined whether the out-of-court statement contains a "substantial indicia of reliability." M.R.E. 803(25); Veasley,735 So.2d at 436; Hennington, 702 So.2d at 415; Eakes, 665 So.2d at 865; Doe,644 So.2d at 1206. The factors to which the court must look in order to establish reliability are "spontaneity and consistent repetition; mental state of declarant; use of terminology unexpected of a child of similar age; and lack of motive to fabricate." Id. These factors are simply considerations that the judge may make; however, it is imperative that the judge make an "overall determination of whether the child declarant was particularly likely to be telling the truth when the statement was made." *Page 1076 Hennington, 702 So.2d at 416; Griffith v. State, 584 So.2d 383, 388
(Miss. 1991). See Idaho v. Wright, 497 U.S. 805, 822 (1990).
 ¶ 22. In the instant case, the trial judge held out-of-court proceedings to determine the indicia of reliability of D.B.'s statements to the witnesses who would be repeating D.B.'s account of the events that happened on October 16, 1998. During these proceedings, the judge ascertained that D.B. had absolutely no reason to lie about what happened to her. Further, the evidence revealed that her statement was the same each time she related it to a new person. D.B. used terminology such as "private parts" and "bottom" to tell of the incident, as a child would be likely to do. Based on the information that we have reviewed in the record, D.B. used no terminology that would put her account of the events into question. In assessing the overall situation, including the evidence presented against Marshall, the judge found that D.B.'s statements regarding the incident were reliable and that, as a child of ten years at the time she made these statements, those statements would fall under the tender years exception to the hearsay rule and would be allowed to be heard by the jury. We agree.
 ¶ 23. Marshall argues that the fact that D.B. waited a few days before she told anyone of the incident is evidence that it, in fact, did not happen. In Veasley, the court opined that a child's delay in making a complaint against the perpetrator or telling someone of the sexual abuse was excusable if the delay was caused by fear or "other equally effective circumstances." Veasley, 735 So.2d at 436. Here, D.B. chose to tell her school nurse three days after Marshall sexually accosted her. Her testimony on the stand, including her frequent silence when asked specific questions about the sexual battery, indicated an apparent fear of talking frankly and openly about the events of October 16, 1998. Further, testimony of the physicians in this case reveals that D.B. exhibited signs of severe apprehension, anxiety and agitation when they attempted to examine her and discuss the incident with her. We therefore find that D.B.'s delay in telling someone of the sexual battery that she suffered at the hands of Marshall was excusable due to consistent evidence of her appreciable concern and uneasiness in speaking about the incident. Moreover, Marshall presents nothing to this Court that would tend to convince us that D.B. had any reason to fabricate this dreadful occurrence. Absent evidence to that effect, we must agree with the lower court in concluding that D.B.'s statements were reliable and consistent in accordance with M.R.E. 803(25). Thus, we find that the testimony was properly allowed to be considered by the jury.
 ¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF TALLAHATCHIE COUNTY OFCONVICTION OF SEXUAL BATTERY UPON A CHILD AND SENTENCE OF TWENTY YEARS INTHE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARSSUSPENDED, IS HEREBY AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TOTALLAHATCHIE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P. JJ., PAYNE, THOMAS, LEE,IRVING, MYERS AND CHANDLER, JJ., CONCUR. *Page 1077