# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-KA-01163-SCT

*RICHARD JACKSON JACOBS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 7/20/2001 |
| TRIAL JUDGE: | HON. DALE HARKEY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JIM DAVIS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | ROBERT KEITH MILLER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/22/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., EASLEY AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     Eighteen-year-old Richard Jackson Jacobs was indicted for the capital murder of Robert Martin. Also indicted were Jeremy Margin and Crystal Broadus. The cases were severed. The jury found Jacobs guilty, but could not agree on a punishment. The trial court sentenced Jacobs to life imprisonment without parole. Jacobs's motion for a new trial was denied. Jacobs appeals to this Court and submits the following issues on appeal:

      I.      Whether the trial court erred in denying a continuance of the suppression hearing.

II.      Whether the trial court erred in denying the motion to suppress Jacobs's videotaped statement in Texas.

III.     Whether the trial court erred in excluding the testimony of Joseph Bailey.

IV.     Whether Jacobs was entitled the jury instruction of the lesser-included offense of manslaughter.

V.     Whether the errors committed at trial, if not individually, cumulatively require reversal.

## FACTS

¶2.     The victim, Robert Martin, lived in Jackson County, Mississippi, with his son, Jeremy Martin. The defendant, Richard Jacobs, recently moved to Mississippi and had been staying at the Martin home for a couple of days. Martin was found dead on the couch in his home. The autopsy report concluded that Martin was sitting on the couch asleep when he was shot at close range in the head with a shotgun. After the murder, Jeremy Martin, Richard Jacobs, Crystal Broadus, and Donnie Ryals were missing along with Martin's car.

¶3.     Jeremy Martin exhibited signs of violence in the past, including stabbing his stepfather in the back and breaking his girlfriend's nose and his father's ribs. He had previously told other people that he planned to kill his father. Jeremy eventually decided he would kill his father. Because Jeremy needed a weapon, Crystal took a shotgun from her grandparent's home where she was living. On the night of the murder, Crystal arrived at the Martin house with the shotgun. Richard Jacobs was there along with Donnie Ryals. As he slept on the couch, Martin was shot and killed. His keys and wallet were taken, and Jeremy, Crystal, Richard and Donnie left in Martin's car. They planned to go to Texas where Richard's father lived.

¶4.     On their way to Texas, the foursome stopped in Louisiana and threw the shotgun in Irish Bayou outside of New Orleans.  Richard eventually reached his father's home in Bastrop, Texas, where he was arrested by Texas Ranger Rocky Wardlow.   At the time of the arrest, Richard was in the yard with his father and brother.  Richard was given a *Miranda* warning and placed in the police car.  Richard's father testified that he told Ranger Wardlow that he was going to call an attorney and then leaned into the police car to tell Richard not to sign anything or say anything until the attorney got to the jail.  Jacobs testified that Wardlow was less than an arm's length away when he said this.  Ranger Wardlow denied hearing any statement by Richard at the scene of the arrest with respect to securing an attorney.

¶5.     When Richard arrived at the Sheriff's office, a videotaped statement was made by him prior to his attorney's arrival.  Richard testified that he gave the statement of his own free will, was not threatened or coerced, and was not slapped around or promised anything.  In his statement, Richard told Wardlow that he was the one who pulled the trigger while Jeremy held a .357 magnum to his head.  After the arrests of the other individuals, the police recovered the shotgun, and it was identified as belonging to Crystal's grandfather.  There was no recovery of a .357 magnum or any pistol other than a BB pistol.

### ANALYSIS

### I.     *Whether the trial court erred in denying a continuance of the suppression hearing.*

¶6.     Jacobs filed his motion to suppress alleging his statement was unconstitutionally obtained by improper coercion and duress and/or promises of suggestion of leniency.  He also argued that at the time of his arrest, officers were informed that an attorney had been called, yet they proceeded to question Jacobs.  At the hearing, defense counsel requested a continuance because the videotape was inaudible, and he could not adequately represent his client until he  knew what the tape said.  The trial court denied the continuance.  On appeal to this Court, Jacobs avers that the hearing on the motion to suppress should have

3

been continued until a transcript of the tape was available to the defense in order to completely explore the implied promises of leniency contained in the tape.

¶7. We will reverse the denial of a motion for continuance only when manifest injustice appears to have resulted from the decision to deny the continuance. *Johnson v. State*, 631 So.2d 185, 189 (Miss. 1994). Whether a continuance should be granted or denied is within the sound discretion of the trial court. *Id.* When analyzing whether there was an abuse of discretion or manifest injustice, it must be determined whether the absence of the transcript of Jacobs's statement worked to his prejudice.

¶8. Jacobs argues that without the transcript, his attorneys were unable to thoroughly cross-examine Ranger Wardlow regarding his implication to Jacobs that they would "work with" his statement and other implied promises of leniency in the tape. However, the State points out that the trial judge, the prosecutor and defense counsel all listened to the tape, and all except the defense attorney found the tape to be audible. The State further asserts that the denial of continuance did not prevent counsel from making his arguments, or cross-examining the witness regarding the constitutional challenges to the statement. Therefore, there was no prejudice. This Court finds that the judge did not abuse his discretion because he listened to the tape and determined it to be audible. Additionally, the judge allowed the defense up to three additional weeks to supplement the evidence before the court with affidavits. Therefore, Jacobs was not prejudiced by the refusal of the court to make the transcripts of the tape available to defense counsel. This issue is without merit.

> **II.** **Whether the trial court erred in denying the motion to suppress Jacobs's videotaped statement in Texas.**

¶9. The Fifth Amendment protection against compelled self-incrimination includes the right to counsel at custodial interrogations. *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68

4

L.Ed.2d 378 (1981); *Miranda v. Arizona*, 384 U.S. 436, 474, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). If the individual states that he wants an attorney, the interrogation must cease until the attorney is present. Jacobs argues that the interrogation was started despite the fact that he, his parents and the police knew that an attorney was being contacted. Defense counsel claims that the totality of the circumstances indicates that Jacobs did not knowingly and intelligently waive his rights, free of implied promises of leniency, under *Miranda.* The implied promises of leniency that Jacobs is referring to are the statements by Wardlow on the videotape. Wardlow told Richard, "If you are the one that pulled the trigger, there's probably a reason for it, and that can be entered, people can understand . . . I mean, we can work with that." Moreover, Jacobs claims that when a young

person is arrested for a serious crime, and the parent in the presence of law enforcement informs them that he is calling a lawyer, that should be enough to invoke the right to counsel. ¶10. The State avers that none of Jacobs's constitutional rights were violated. A confession is voluntary if, taking into consideration the totality of the circumstances, the statement is the product of the accused's free and rational choice. *Greenlee v. State*, 725 So.2d 816, 826 (Miss. 1998); *Marshall v. State,* 812 So.2d 1068, 1072 (Miss. Ct. App. 2001). The circuit court sits as a fact finder when determining voluntariness of a confession, and its determination will not be reversed unless manifestly wrong. *Blue v. State*, 674 So.2d 1184, 1204 (Miss. 1996), *overruled on other grounds by King v. State*, 784 So2d 884 (Miss. 2001). Here, Jacobs testified at trial that he was not promised, threatened or coerced to give the videotaped statement in Texas. Jacobs further testified that he gave his statement on his own free will, even though his father told him not to speak to anyone until his lawyer arrived. Based on the totality of the circumstances in the present case, Jacobs's constitutional rights were not violated because his statement was given freely without coercion.

¶11.    The State further asserts that Jacobs's constitutional rights were not violated when he gave his statement because he voluntarily waived his *Miranda* warnings.  Jacobs contends that his age hindered his ability to knowingly waive these warnings.  The State relies on *Horne v. State*, 825 So.2d 627 (Miss. 2002), where a fourteen-year-old was convicted of aggravated assault and capital murder and was sentenced to consecutive terms of 20 years for aggravated assault and life imprisonment without parole for capital murder.  This Court stated:

> We have held that, if the nature of the crime is one where the defendant could receive life imprisonment or death and if original jurisdiction in the case lies in the circuit court, it is not necessary that a minor have a parent present during interrogation. *Blue*, 674 So.2d at 1205.  Horne's age has "no special bearing on his ability to be questioned without a parent and voluntary waive his rights. *Id.*

*Horne*, 825 So.2d at 639.  In the present case, Jacobs's father told him that he was calling an attorney and not to speak to anyone.  However, Jacobs testified at trial that despite his father's statement, he signed the *Miranda* warning card after his rights were read to him and gave his statement.  He further testified that he was not forced or coerced into giving this statement.  Moreover, Jacobs stated that once he asked for his attorney, the interview was stopped.  The fact that Jacobs was eighteen years old at the time of the arrest has no bearing on his ability to comprehend the questions and waive his rights.  The facts indicate that Jacobs did knowingly waive his rights, despite being told by his father not to speak without the presence of his attorney.  We conclude that none of Jacobs's constitutional rights were violated and that the trial court did not err in denying Jacobs's motion to suppress the videotaped statements made in Texas.

### III.  Whether the trial court erred in denying the testimony of Joseph Bailey.

¶12.    Joseph Bailey was Jacobs's first witness at trial.  Bailey had been indicted in a separate proceeding with a charge of criminal conspiracy in the murder for which Jacobs was on trial.  Beyond his name and

his pending charges, Bailey declined to answer any further questions based on his Fifth Amendment right against self-incrimination. The defense sought to question the law enforcement officer who interrogated Bailey in order to show through this introduction of hearsay that there was another gun that was used to put Jacobs in duress forcing him to kill. The trial court did not allow Bailey's statements because they were found to be inconsistent, not corroborated by other evidence and contradicted by evidence already admitted. For these reasons, the court found that the statements were inadmissible because they were beyond the scope of the hearsay exception under Rule 804 (b)(3) of the Mississippi Rules of Evidence:

> (b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> (3) Statement Against Interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have make the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

¶13. Bailey was clearly classified as an "unavailable" witness under this rule since he invoked his Fifth Amendment right. The inconsistent statement in question is Bailey's statement to the Jackson County detective about where the handgun that Jacobs claims was held to his head was obtained. Bailey told the detective that he went with Crystal Broadus to get a handgun from her grandparents' house. He said that she reached under the bed and took out a BB pistol, pushed it back under the bed and went to her closet and took another pistol. Bailey made this statement on three different occasions, and there were three different versions of the statement. However, all statements stated that Broadus did in fact go into her room to retrieve a handgun, and that a handgun, not a BB pistol was in Broadus's possession. ¶14. Jacobs claims the totality of Bailey's statement inculpated him and incriminated him to an extent that it satisfies the

requirement that it is a statement against his criminal interest. Also, Jacobs claims that because this statement would subject Bailey to criminal liability, a reasonable person would not have made that statement unless he believed it was true. Therefore, Jacobs argues, Bailey's statement meets the requirement of the hearsay exception under M.R.E 804 (b)(3). Jacobs relies on *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L. Ed.2d 476 (1994), where the Supreme Court analyzed Federal Rule of Evidence 804(b)(3) in stating that this rule "is founded on the common sense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." *Id.* at 599.

¶15.    Jacobs further asserts that the statement should have been admitted because the fact that Bailey told the story three time does not render it unreliable. Jacobs avers that Bailey had no motive to fabricate this statement because Bailey and Jacobs were not friends or acquaintances and there was no indication that Bailey somehow wanted to help Jacobs. "The United States Supreme Court has held that reliability can be inferred 'where the evidence falls within a firmly rooted hearsay exception . . .," otherwise, there must be 'a showing of particularized guarantees of trustworthiness.'" *Garrison v. State*, 726 So.2d 1144, 1148 (Miss. 1998) (quoting *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)). In *Idaho v. Wright*, 497 U.S. 805, 820, 110 S.Ct. 3139, 49, 111 L.Ed.2d 638 (1990), the United States Supreme Court further stated that "if the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule does not bar admission of the statement at trial."

¶16.    Here, the dispositive question is whether Bailey's statement shows particularized guarantees of trustworthiness. This Court finds that it does not. Because there were three different versions of Bailey's statement, it cannot be said that if the statement had been cross-examined at trial it would have been of

marginal utility. Due to the fact that there is three different versions of Bailey's statement, there would be a need for cross-examination at trial. Therefore, the hearsay rule bars admission of the statement due to lack of trustworthiness.

### IV. Whether the defendant was entitled to the jury instruction of the lesser included offense of manslaughter.

¶17. Where under the evidence a reasonable jury could find the defendant not guilty of the principal charge made in the indictment but guilty of a lesser-included offense, the trial judge ordinarily should instruct the jury regarding the offense. *Fairchild v. State*, 459 So. 2d 793, 800 (Miss. 1984); *Tyler v. State*, 784 So.2d 972, 975 (Miss. Ct. App. 2001). "We have repeatedly held that the accused is entitled to a lesser offense instruction only where there is an evidentiary basis in the record therefor. Such instructions should not be granted indiscriminately, nor on the basis of pure speculation." *Wilson v. State*, 639 So.2d 1326, 1329 (Miss. 1994) (citations omitted).

¶18. Jacobs argues that the trial court erred in refusing the jury instruction of the lesser-included offense of manslaughter. He claims that if the jury finds that there was not intent

on the part of Jacobs to commit robbery because of the duress, there was not capital murder. This would reduce the crime to murder. Jacobs further avers that the evidence is such that a jury could find that Jacobs shot Mr. Martin because he was under the imminent threat of death himself, therefore, the jury should have been allowed to consider manslaughter as a lesser included offense.

¶19. This Court finds that the trial court was correct in denying the manslaughter instruction because there was no factual basis or evidence to support the instruction. Even if Jacobs was found not guilty of murder, he would nevertheless be guilty of capital murder because the victim was killed in the commission of a robbery. The jury was given instructions that duress is a defense to robbery, and the jury found that

there was no such duress. Therefore, because Jacobs was found guilty of robbery, and the death resulted in the commission of the robbery, Jacobs is guilty of capital murder regardless of whether a lesser-included offense instruction is given. The trial court did not err in refusing the jury instruction of the lesser-included offense of manslaughter.

> ***V.   Whether the errors committed at trial, if not individually, cumulatively require reversal.***

¶20. Jacobs contends that the cumulative errors committed at trial are grounds for reversal. ***Baggett v. State***, 793 So.2d 630, 636 (Miss. 2001) (citing ***Mitchell v. State***, 539 So.2d 1366 (Miss. 1989)). There is neither individual nor cumulative reversible error in this case.

## CONCLUSION

¶21. For these reasons, the trial court did not commit any reversible error. Therefore, the judgment of the trial court is affirmed.

¶22. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT WITHOUT THE POSSIBILITY OF PAROLE, AFFIRMED.**

**SMITH, C.J., WALLER , P.J., EASLEY AND DICKINSON, JJ., CONCUR. CARLSON, J., CONCURS IN RESULT ONLY. COBB, P.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**