# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KA-00827-SCT

*CHRISTOPHER R. WITHERS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/5/2004 |
| TRIAL JUDGE: | HON. V. R. COTTEN |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DONALD L. KILGORE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | MARK DUNCAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/21/2005 |

MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE SMITH, C.J., EASLEY AND GRAVES, JJ.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Christopher R. Withers was convicted in Circuit Court of Neshoba County of the crime of statutory rape, under Section 97-3-65(1)(b) of the Mississippi Code Annotated, and was sentenced to a term of 30 years in the custody of the Mississippi Department of Corrections. Following the denial of his motion for judgment notwithstanding the verdict and/or motion for a new trial, Withers appeals to this Court.

## FACTS AND PROCEDURAL HISTORY

¶2.     During the trial the court held a competency hearing, as prescribed by Rule 601 of the Mississippi Rules of Evidence,  to determine if the victim,[1] who was fourteen years of age, was competent to testify during trial.   The court determined that the victim had the requisite capacity to testify.   The victim testified that as the former stepdaughter of Withers, she had been subjected to sexual abuse, by Withers, since around the age of six or seven.  She testified that when she was six or seven years old, while her mother and brother were gone, Withers would make her miss the bus and fondle her.   She stated that this happened "[s]ometimes every day, sometimes every other day, sometimes every three days."   The victim testified that in addition to being fondled by Withers, she was forced to partake in oral sexual acts. The victim testified by the time she reached the age of nine, that the abuse had "moved to" sexual intercourse.   The frequency of the occurrence of the oral sexual acts and sexual intercourse ranged from every day to every three days.

¶3.     The victim stated that she did not tell her mother about any of the incidents because "I didn't want to see my momma hurt . . . because I knew she loved him, and I was scared of him."  According to her mother, the victim "was afraid I'd take him back, because I had took him back so many times . . . She said she was scared if she said anything before then, until she really knew it was over between us, that he would hurt her."  The victim stated that she was scared of

_____

[1] Because the victim in this case was a minor we will refer to her as "the victim."
Initials will be used for the names witnesses who were minors at the time of the incident in
order to protect their identity.

Withers because he "always told me never to say it 'cause he'd come back." Withers was charged with and indicted for having sexual intercourse with the victim in August 2002. She testified that although her sixteen-year-old brother was present in the home when the rape occurred, he was asleep. The victim further testified that Withers moved out in May 2003, and the activity continued up until October 2002, when Withers left the residence because he and the victim's mother had separated. The victim stated that around May 1, 2003, was the first time she told anyone about what had occurred. She testified that the person that she told was her best friend, J.B., because J.B. kept asking her why she was crying. The victim stated she was crying because since Withers had moved out of her house, she was afraid he would hurt her eight-year-old stepsister, L.W. Although L.W. was not the child of the victim's mother, she and Withers had legal custody of L.W. during their marriage, and when they got a divorce in February 2003, L.W. went with Withers.

¶4.     Once the victim told her best friend, J.B., about the abuse, J.B. encouraged the victim to tell Deputy Sheriff Clark Reynolds, whom the victim knew and trusted. Reynolds was a Deputy Sheriff with the Neshoba County Sheriff's Office and a resource officer assigned to the school that the victim attended. The victim did not talk to Deputy Reynolds the same day that she told J.B., but instead, did so about two or three weeks later. Deputy Reynolds testified that the victim and J.B. expressed their concerns about a "friend" they knew that was being sexually molested by the stepfather of the "friend." Both girls also expressed a great concern for the "friend's" younger sibling. The girls returned the next day and told Deputy Reynolds that the "friend" was really the victim. Deputy Reynolds, immediately contacted Carrie

3

Robertson, the school counselor, Rita Gaines, a social worker, and Sasha Brown Reed, a social worker with the Department of Human Services [ DHS]. Deputy Reynolds also contacted Ray Sciple, an investigator for the Neshoba County Sheriff's Department. Reed testified that the victim told her that in addition to the sexual abuse, she was forced to smoke marijuana, and drink vodka and Crown Royal and that this occurred while the victim's mom was either asleep or gone to work. The victim testified that DHS had contacted her mother and her brother, and it was then that she finally told her mother about the abuse.

¶5. Reed scheduled a doctor's appointment for the victim with Dr. Melanie Byram at the Sebastopol Clinic for May 19, 2003. However, Dr. Byram was unable to conduct a physical exam on the victim that day, so the examination was conducted on June 2, 2003. Dr. Byram, who was accepted as a pediatric physician expert, testified that the victim's hymen was no longer intact, and that she was able to conduct the examination by using a speculum. She testified that because the hymen was no longer intact and because she was able to easily utilize a speculum during the examination, both of these factors were "very suggestive that the child was sexually active." She did note, however, that sexual activity was not the only cause for a hymen to rupture, but ultimately concluded that "the fact that the speculum was introduced was, again, very suggestive, and you can't be a hundred percent sure, but it's suggestive that this child was sexually active."

¶6. Once the State rested, Withers moved for a directed verdict, and the judge overruled that motion. The trial ended with the jury finding Withers guilty of the crime of statutory rape, pursuant to Section 97-3-65(1)(b) of the Mississippi Code Annotated, and Withers was

4

sentenced to a term of 30 years in the custody of the Mississippi Department of Corrections.

Following the trial court's denial of Withers' post trial motion, this appeal ensued.

**DISCUSSION**

### I.   DID THE CIRCUIT COURT ERR BY LIMITING WITHERS' CROSS-EXAMINATION OF THE ALLEGED VICTIM?

¶7.    The standard of review on appeal from evidentiary rulings is prescribed by Rule 103(a) of the Mississippi Rules of Evidence, which states that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected."  This Court has articulated the applicable standard of review in evidentiary rulings:

"Our standard of review for the admission of or refusal to admit evidence is well settled. 'Admission or suppression of evidence is withing the discretion of the trial judge and will not be reversed absent an abuse of that discretion.'" ***Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc.***, 716 So. 2d 200, 210 (Miss. 1998).  Abuse of discretion is found when the reviewing court has a "definite and firm conviction" that the court below committed a clear error of judgment and conclusion it reached upon a weighing of the relevant factors.  ***Caracci v. Int'l Paper Co.***, 699 So. 2d 546, 556 (Miss. 1997).

¶8.    On appeal, Withers asserts that he was prejudiced "by the trial court's abuse of discretion regarding his cross-examination of [the victim] ."  Withers cites ***Saunders v. State***, 352 So. 2d 822, 824 (Miss. 1977), in which this Court held that the credibility of a witness may be impeached on cross-examination by showing bias, prejudice, motive, or hostility. Withers claims that during trial, his counsel was "not allowed to conduct a full-bore cross-

examination of [the victim] and was limited in the number of questions he wanted to ask [the victim] regarding prior inconsistent statements." Withers asserts that he was prejudiced by not being able to fully cross-examine the victim in order to impeach her credibility as a witness.

¶9.     As previously mentioned, the victim, on direct examination by the State, was allowed to explain why she did not tell anyone about the sexual abuse, and she answered that it was because she was afraid of Withers. Counsel for Withers attempted to impeach the victim's testimony by asking her about an occasion in February 2003, at the funeral of Withers' cousin, when she purportedly hugged Withers and told him she loved him. When the victim denied the occurrence of these events, the State objected, and the circuit judge instructed Withers' counsel to stay away from what he deemed was an attempt to discuss consent, which was clearly not an element of the crime of statutory rape. Outside of the presence of the jury, counsel for Withers informed the judge that the purpose for his series of questions was to lay the foundation to further impeach the victim's testimony with prior inconsistent statements made by the victim as well as the testimony of other witnesses who were present at the funeral home. This incident allegedly occurred at the McLain-Hayes funeral home in a coffee room, with five or six other people present. Deborah Withers, the wife of Withers at the time of trial testified that the victim asked Withers "'are you okay, daddy? .   . . .' And she walked over to Chris and she hugged him–she hugged his neck, kissed him on the cheek, and said I love you daddy." However, the victim stated that she did not remember hugging and kissing Withers

6

goodbye. She stated that she did not sit by him and that she did not recall telling him to "take care, dad."

¶10.    When Withers' counsel asked the victim whether in her written statements to a social worker and the officer that investigated the case that she claimed "that this was against her will," the State's objection was sustained by the circuit judge. Again, out of the presence of the jury, Withers' counsel made his objections and offered to the record that he was seeking to question the victim about the allegations that she had made in the written statement. The State objected and asserted that Withers was attempting to question whether or not the victim had consented to the sexual activity. Counsel for Withers recognized that consent was not an element fo the crime that Withers was charged with and argued for the record that he was simply seeking to impeach the victim's testimony with her prior inconsistent statements, regarding her purported fear of Withers. The judge forbade counsel for Withers from this line of questioning, which involved an unavoidable inference that the victim had consented to the abuse.

¶11.    In addition to claiming he was irreparably harmed by the denial of his opportunity to impeach the victim, Withers also claims that he was unduly prejudiced by being deprived the opportunity to show the jury that the victim had a motive to be untruthful and may have been untruthful while testifying. Deborah Withers testified that the victim came to her place of employment, Tobacco World, to bring her Withers' mail and she asked Deborah Withers to give it to her daddy. Upon doing so, Deborah Withers testified that the victim stated "I hope you're happy, you took my dad away." The victim admitted to saying this and acknowledged

7

the reason for doing so was "[f]or my mother's sake. My momma didn't know [about the sexual abuse] at the time. For her benefit, she asked me to say something, so I did, for her." When asked if her statement meant she wanted Withers to return home, to live with her, the victim stated "I don't care that he's gone. I've got my father right down there that loves me. And that's all I need is my family and my friends."

¶12.    In addition to Withers' inference that the victim's allegations of abuse were a retaliatory attempt to rectify her mother's hurt over the relationship ending, he also asserted  that the victim's allegations may have been an attempt to help her mother win custody of Withers daughter.    However, the victim's mother admitted that she did attempt to gain custody of Withers' daughter and that his daughter and the victim were close friends.    When asked if it was possible that the charges made against Withers were made in attempt for her to gain custody of Withers' daughter, the victim's mother stated "[n]o, sir. [The victim] is a very honest person.    She's went through a lot."    She also testified that Withers' daughter was not her natural child, and that her efforts to gain custody of her after the divorce were limited  to consulting with an attorney and asking Withers if the child could live with her.    She specifically stated that Withers told her that she would not get custody of his daughter, so she did not "push the issue."    In other words, she did not file any papers to attempt to get custody of the child, and ultimately, she simply inquired about the possibility of gaining custody.

¶13.    The record clearly shows that Withers was allowed to adequately cross-examine the victim.    The circuit judge did not commit a clear error of judgment because he did not prevent Withers from cross-examining the victim, but instead, only limited the extent thereof.    No

8

evidence is found within the record that suggests that Withers was prejudiced by the circuit judge's limitation. Therefore, we find that the circuit judge did not abuse his discretion.

## II. DID THE CIRCUIT COURT ERR IN ADMITTING THE HEARSAY TESTIMONY OF THE ALLEGED VICTIM INTO EVIDENCE UNDER THE "TENDER YEARS EXCEPTION"?

¶14. Withers argues on appeal that the circuit judge erred in admitting the hearsay testimony of the victim. Rule 803(25) of the Mississippi Rules of Evidence, also termed as the "Tender Years Exception," provides an exception to some hearsay statements and states that:

> A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness . . . .

The comments to M.R.E. 803(25) list several factors, sometimes known as the *Wright* factors, that a trial court should use to consider whether there is a substantial indicia of reliability to the hearsay statements in question. These factors are:

> (1) whether there is an apparent motive on the declarant's part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant's faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declarant's age, knowledge, and experience make it unlikely that the declarant fabricated.

*Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). This Court has stated that "there is a rebuttable presumption that a child under the age of twelve is of tender

9

years." ***Veasley v. State***, 735 So. 2d 432, 436 (Miss. 1999). As noted by the circuit judge, the relevant time to determine whether the tender years exception applies is the age of the child at the time the relevant statement was made rather than the age of the child at the time that testimony is given at trial. ***Marshall v. State***, 812 So. 2d 1068, 1075 (Miss. Ct. App. 2001).

¶15. As mentioned previously, the circuit judge held two hearings outside of the presence of the jury and on record, as prescribed by case law. At the first hearing, the circuit judge found that the victim was competent and capable of testifying as a witness, to which counsel for Withers did not object. After the testimony of the victim's mother, the State informed the judge that "we have several other witnesses with similar testimonies." The judge stated that it would be in the "interest of judicial economy, since this is a common issue that implicates Rule 803(25) of tender years exception, let's go ahead and voir dire all the witnesses outside the presence of the jury."

¶16. During the course of the second hearing, which was also held outside the presence of the jury, counsel for Withers objected to the admission of hearsay statements made by the victim pursuant to the tender years exception. The circuit judge noted that the victim was the age of 13 when she made the statements to others regarding the alleged sexual abuse, and he concluded that the victim was, indeed, a child of tender years. Ultimately, the circuit judge found that the hearsay statements to the victim's mother, J.B., the victim's friend, Clark Reynolds, Sasha Brown Reed, and another friend, R.Q., were exceptions to the hearsay rule and were admitted into evidence as well as considered by the jury.

10

¶17. Withers argues that the circuit judge abused his discretion by admitting these statements because there was no indicia of reliability. Withers also asserts that the judge abused his discretion by determining that the victim was of tender years. Withers avers that the victim's statements were "not trustworthy enough to allow in court." Counsel for Withers cites to *Byars v. State*, 835 So. 2d 965, 968 (Miss. Ct. App. 2003), to suggest that spontaneity and consistent repetition, mental state of the declarant, use of terminology unexpected of a child of similar age, and lack of motive to fabricate should also be considered in determining "tender years" reliability. Withers further states that the victim's statements failed to indicate the requisite reliability under any of the *Wright* factors, and also, that many of the factors rely on the kind of information Withers was not allowed to ask during trial.

¶18. Withers maintains that the victim's statements were not spontaneous and were inconsistent over time. He also argues that her statements were clearly planned because she "always managed to tell someone who had no knowledge of her home life and only when no one else was around. [The victim] showcased this talent in February 2003 when she was loving and cordial to Chris Withers at his cousin's funeral, but disheveled and scared months later when recounting her allegations of sexual abuse." Withers also contends that regarding the use of terminology unexpected of a child of similar age, the victim was not "embarrassed or too ashamed to use the correct parts of the body and call them by their proper names when recounting her alleged sexual abuse. [The victim] was also mature enough when asked what happened by the prosecutors to tell them without any coaxing or help that she and Chris Withers allegedly had intercourse." Again, Withers states that the victim did not exhibit a lack

11

of motive to fabricate, but instead, had a motive to lie because she was upset by the divorce of her parents and also, because her mother wanted custody of Withers' daughter. Withers concludes that "a brief look at the rest of the *Wright* factors reiterates that [the victim]'s testimony is not trustworthy."

¶19. Withers' contentions are misplaced and without merit. The record reflects that there is substantial, credible evidence to support the circuit judge's decision to allow the victim's statements into evidence under the tender years exception. During the competency hearing, when asked if she knew the difference between the truth and a lie, the victim stated that "[t]ruth is when you do something wrong, you admit to it, and yeah, you're scared to tell the truth, but you know its right, and you do it because you're hurting everybody else, and yourself inside. A lie is when you don't care." The circuit judge stated that "[i]n that area of examination, it appeared that she distinctly knows the difference in truth and imagination."

¶20. Additionally, the victim was fourteen at the time of trial, and twelve when the sexual intercourse began. The circuit judge also found evidence that supported her reliability, as enumerated in the *Wright* case. The circuit judge also based his decision on the testimony of the numerous prosecution witnesses about "the time, content, and circumstance" under which the victim told of the sexual abuse by Withers. The victim's mother testified that the victim told her about being raped by Withers, and J.B. testified that when she heard the victim crying at school and when she asked what was wrong, the victim told her that she had been raped by her stepfather. Sasha Reed, R.Q., and Dr. Byram also testified that the victim told them about being raped by Withers. The circuit judge found "substantial indicia of reliability" in the

12

victim's statements made to five different witnesses, who were all cross-examined by counsel for Withers. In his explanation as to why the statements were admissible, the circuit judge stated:

> [O]ne of the core issues here as far as what triggered the stopping of his, was that the defendant's daughter, [name omitted], lived there in the home with the mother and step-father, and apparently there was a good relationship between [the victim] and [name omitted].
>
> [The victim] also knew that her mother loved the defendant, and those two things working together seemed impliedly by the totality of the evidence. It is implied to the Court that she allowed this to go on because she didn't want to hurt her mother. She knew her mother loved the defendant. Also, she was afraid of the defendant.

¶21. The circuit judge stated that "[i]t is hard to jump into the skin of a little girl who is 6 years old, and who would have at the time no judgment whatsoever, no wariness about sexuality, and to be thrust in an adult situation where a grown person was performing sexual acts upon her." He concluded that the victim was "at the mercy of the defendant as she grew older, and of course, it can be inferred that as she got older and was at school and around her classmates, that she became more aware of sexuality and things that were going on." The circuit judge stated that "[b]ut it comes back to this one thing that is what triggered all of this, . . . the breaking up of the marriage of the victim's mother with her husband . . . And that husband was going to leave and was going to take his daughter [name omitted], with him. And one of the high points, I believe, in the testimony, which is supportive of the state's position is that [the victim] did not want to see the same thing happen to her, to [name omitted], as had happened to her."

13

¶22.  Regarding the specific issue of reliability, the circuit judge stated that after the dissolution of the marriage that "Pandora's Box was opened, so to speak."  He further stated:

> Conversations at school with J.B., when she saw her classmate crying, and that she asked her about it.  And she said, my stepfather raped me.  And that lead to telling Clark Reynolds, the deputy sheriff, in the school resource officer.  And of course, from that point on, everything began to unravel quickly.  And the testimony of each of these witnesses would be supportive as far as the consistency of what had happened.
>
> As far as the lack of motive to fabricate, I think it is just at the other end of the pole of someone fabricates something.  I think she was wanting to protect [name omitted], the little girl, and to not offend her mother, knowing that she loved her husband at that time . . .
>
> Because the child was thirteen at the time, I find that the child, [the victim], is mentally and emotionally of tender years, and I allude to the case of *Marshall v. State*, 812 So. 2d 1068, which states basically that the court must make a finding of tender years or not, because if the child is under twelve years of age, there is a rebuttal presumption as such, but the child was over 12 at that time but I make the finding now.
>
> And the second finding I make, based on the totality of the circumstances and the evidence, the *credible evidence,* I affirmatively find that at the time of the content in circumstances of the statements provided *substantial indicia of reliability.*  And therefore I find that the statements that have been made here to the mother,  J.B., Clark Reynolds, Sasha Brown Reed, and R.Q., also are all found to be exceptions to the hearsay rule, and are therefor inadmissible.

¶23.  The record shows that the circuit judge held a hearing and found, based upon the factors enumerated in *Idaho v. Wright*, 497 U.S. at 822, and adopted by this Court in *Doe v. Doe*, 644 So. 2d 1199, 1206 (Miss. 1994), that there were indicia of reliability.  This Court stated that "while no mechanical test is available, factors which should be considered in judging reliability are: included spontaneity, consistency, mental state of the declarant, a lack of motive to fabricate, and use of terminology unexpected of a child of similar age."  *Eakes v. State*,  665

14

So. 2d 852, 865 (Miss. 1995) (citing **Doe v. Doe**, 644 So. 2d at 1206). Accordingly, we find that the circuit judge did not abuse his discretion.

### III. DID THE CIRCUIT COURT COMMIT REVERSIBLE ERROR BY DENYING WITHERS' MOTION FOR J.N.O.V. AND HIS MOTION FOR A NEW TRIAL?

¶24. This Court has consistently held that the standard of review for the denial of a motion for a judgment notwithstanding the verdict is determined by the sufficiency of the evidence. "This Court must review the trial court's finding regarding sufficiency of the evidence at the time the motion for JNOV was overruled." **Eakes v. State**, 665 So. 2d at 872. *See **Wetz v. State***, 503 So. 2d 803, 807-08 (Miss. 1987). "The evidence is viewed in the light most favorable to the State. All credible evidence supporting the conviction is taken as true; the State receives the benefit of all favorable inferences reasonably drawn from the evidence." **Id.** (citing **McClain v. State**, 625 So. 2d 774, 778 (Miss. 1993)). "Only where the evidence, as to at least one of the elements of the crime charged, is such that a reasonable and fair minded jury could only find the accused not guilty, will this Court reverse." **Id.**

¶25. On appeal, Withers asserts that the circuit judge should have granted his motion for a judgment notwithstanding the verdict because "the evidence presented was not sufficient for reasonable jurors to convict him." He argues that "even when considering the evidence in the light most favorable to the state, it is clear that the trial court should have granted Chris Withers' motion for a judgment notwithstanding the verdict, because no reasonable juror could have found him guilty beyond a reasonable doubt given the facts admitted into evidence."

Withers claims that he did not abuse the victim and that she was not afraid of him. He avers that this assertion was substantiated by the testimony of witnesses who purportedly saw the victim show "love and affection for him." He also notes that his wife testified to the fact that the victim was "obviously disturbed that Chris Withers was no longer a part of her family and resented his new marriage."

¶26. Withers also contends that none of the evidence presented connected him to the alleged sexual abuse other than the accusations of the victim. Withers believes this theory was supported by the fact that no other person can corroborate the testimony of the victim, or even claimed to have seen any sexual abuse between the victim and Withers. He states that five people were living in their household during the time that the abuse allegedly occurred and that no one ever saw anything. However, this assertion was false because the victim's brother, J.H., testified at trial that he saw Withers go into the bathroom behind the victim, and he shut and locked the door. He also testified that R.W., Chris Withers' son, also saw this occur. J.H. stated that R.W. "creeped down the hall . . . and when he tried to open the door, my step-father was on the other side, Chris Withers." J.H. further stated that R.W. was unable to open the door because his father, Chris Withers had it blocked with his foot.

¶27. Withers also states that all of the witnesses called by the State simply repeated what they were told by the victim, and that they never witnessed anything first-hand. However, Dr. Byram, after conducting an examination of the victim, determined that the victim's physical condition was consistent with sexual activity. As mentioned previously, Dr. Byram admitted that there was no conclusive evidence that proved Withers sexually abused the victim.

16

¶28.     However, the record shows that the victim identified Withers as the person who had raped her.   She also testified of a pattern of sexual assault from the time she was some six or seven years old, which included digital penetration, forced oral sex, and eventual vaginal penetration. She also testified that her date of birth was January 28, 1990, and that she was twelve-years-old when she was forcibly raped by Withers.   The victim's mother testified that Chris Withers' birthday was October 27, 1967, and that the victim told her that he had raped her.   All of the other witnesses called by the State testified that the victim told them that she had been subjected to continuing sexual abuse by her stepfather.

¶29.     In *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993), this Court stated that when the sufficiency of the evidence is challenged, the prosecution is entitled to have the evidence in support of its case taken as true together with all reasonable inferences.   When the evidence previously discussed is taken as true together with reasonable inferences, there was more than sufficient credible evidence in support of the trial court's denial for Withers' motion for J.N.O.V.     Further, Withers' argument about a lack of conclusive physical evidence or eye witness testimony to the actual crime is based upon his incorrect assumption that the prosecution needed conclusive evidence in support of a conviction.   Withers is not entitled to give himself the benefit of inferences from alleged conflicts or gaps in the evidence.   Rather, it was the State which is entitled to have the evidence presented taken as true with reasonable inferences.   As this Court stated in *Neal v. State*, 451 So. 2d 743, 758 (Miss. 1984), any conflicts in the evidence or testimonies of witnesses are for the jury to resolve, as the trier of fact.   Likewise, this Court stated that when the sufficiency of the evidence is challenged, the

17

Court must disregard evidence favorable to the defendant. *Noe v. State*, 616 So. 2d 298, 302 (Miss. 1993).

¶30.    Accordingly, this Court finds that all of the elements required by Miss. Code Ann. § 97-3-65(1)(b) have been satisfied: the victim was twelve at the time of the rape, Withers was over the age of eighteen, there was evidence that he penetrated her vagina with his penis, and the victim was not his spouse.    Therefore, we find that the circuit judge did not err in denying Withers' motion for a J.N.O.V.

###    IV.    DID THE CIRCUIT JUDGE ERR BY DENYING WITHERS' MOTION FOR A NEW TRIAL?

¶31.    "The standard of review of a post-trial motion is abuse of discretion." *Flowers v. State*, 601 So. 2d 828, 833 (Miss. 1992) (citing *Robinson v. State*, 566 So. 2d 1240, 1242 (Miss.1990)).    "This Court will order a new trial only when it is convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Eakes v. State*,  665 So. 2d at 872. *See also  McNeal v. State*, 617 So. 2d 999, 1009 (Miss. 1993); *Burrell v. State*, 613 So. 2d 1186, 1191 (Miss. 1993). The decision to grant a new trial rests in the sound discretion of the trial court, and the motion should not be granted except to prevent "an unconscionable injustice." *Wetz v. State*, 503 So. 2d at 812.    This Court has held that "[w]e must consider all the evidence, not just that supporting the case for the prosecution, in the light most consistent with the verdict and then reverse only on the basis of abuse of discretion." *Jackson v. State*, 580 So. 2d 1217, 1219 (Miss. 1991).

¶32. Withers maintains that the verdict returned by the jury was contrary to the overwhelming weight of the evidence and that the trial court committed reversible error by not granting his motion for a new trial. However, the record shows that the State established all of the elements of the statutory rape charge. Further, the victim's testimony was corroborated by her mother, her brother, her school friends, a social worker, and a physician. Withers cites *Taylor v. State*, 836 So. 2d 774, 777 (Miss. Ct. App. 2003), in which the Court of Appeals held that uncorroborated testimony of the alleged victim alone may be sufficient for a conviction, but only when that testimony is not discredited or contradicted by other credible evidence. However, this Court held that it "recognizes the rule that persons may be found guilty on the uncorroborated testimony of a single witness." *Doby v. State*, 532 So. 2d 584, 591 (Miss. 1988). *See also* **Ragland v. State**, 403 So. 2d 146, 147 (Miss. 1981).

¶33. The jury clearly found the testimony of the victim, as well as many others, more credible than the testimony of Withers, and in doing so, did not indicate any insufficiency in the evidence which supported his conviction. As previously mentioned, any conflicts that arose pursuant to the testimony of Withers, were for the jury to resolve. **Neal v. State**, 451 So. 2d at 758. Therefore, this Court finds that the circuit judge did not abuse his discretion in denying Withers' motion for a new trial, and accordingly, this issue is without merit.

**CONCLUSION**

19

¶34. For the aforementioned reasons, this Court finds that the circuit judge did not commit reversible error. Therefore, we affirm the circuit court's judgment.

¶35. **CONVICTION OF STATUTORY RAPE AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**WALLER AND COBB, P.JJ., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**